In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00085-CR


______________________________




JAMES MATTHEW ROGERS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 12,472




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Cornelius


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 James Matthew Rogers appeals from his conviction for aggravated sexual assault
of a child. A jury convicted Rogers, and at his election, the trial court assessed his
punishment at twenty years' imprisonment. Rogers' counsel on appeal has filed a brief
pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in
which he takes the position that the appeal is without merit, but he then sets out as an
arguable ground for appeal that Rogers was denied effective assistance of counsel. 
Counsel informed Rogers that the brief was for a frivolous appeal and that he had the right
to file a pro se brief. Rogers has not filed a brief, so the case is submitted on counsel's
brief alone.

 Rogers was indicted for aggravated sexual assault of E.B., age 13, and sexual
assault of J.J., age 14. The two charges were tried together. Although evidence showed
that Rogers had sexual intercourse with both girls, he was indicted only for digitally
penetrating the girls' sexual organs. The jury convicted Rogers of the aggravated sexual
assault of E.B. and the sexual assault of J.J. Rogers' punishment was set at twenty years'
imprisonment on each charge, the sentences to run concurrently.

 Rogers contends he was denied effective assistance of counsel at trial because his
counsel did not move to sever the two charges; because his counsel presented a defense
of consent when it was not a viable defense; because his counsel pursued prejudicial
testimony on cross-examination; because his counsel should have entered a guilty plea
since he admitted his guilt on the stand; and because his counsel did not request that a
reasonable doubt instruction be included in the jury charge. We overrule Rogers'
ineffective assistance contention and affirm the judgment.

 The standard for testing claims of ineffective assistance of counsel is set out in
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and has
been adopted for Texas in Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App.
1986). To prevail on an ineffective assistance claim, the appellant must prove by a
preponderance of the evidence (1) that his counsel's representation fell below an objective
standard of reasonableness, and (2) that the deficient performance prejudiced his defense. 
Strickland v. Washington, 466 U.S. at 687; Rosales v. State, 4 S.W.3d 228, 231 (Tex.
Crim. App. 1999). To meet this burden, the appellant must prove that his attorney's
representation fell below the standard of prevailing professional norms and there is a
reasonable probability that, but for his attorney's deficient performance, the result of the
trial would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). 

 Rogers first contends that his counsel was ineffective because he failed to move to
sever the two cases and instead agreed to try them together. The charges against Rogers
arose out of the same criminal episode, so Rogers did not have a right to sever them. See
Tex. Pen. Code Ann. § 3.04 (Vernon Supp. 2002). The Code states that, although the right
to severance does not apply, the court may sever the cases if it determines that either the
defendant or the state would be unfairly prejudiced by the joinder of the offenses. Thus,
in this case, the trial court had the discretion to order the sentences for these offenses to
run either concurrently or consecutively. Tex. Pen. Code Ann. § 3.03(b)(2) (Vernon Supp.
2002). To be entitled to a severance, Rogers was required to show that he would be
prejudiced by a joint trial. Tex. Pen. Code Ann. § 3.04(c). Assuming he could make such
a showing, the trial court still would have had the discretion to make his sentences run
concurrently or consecutively. Tex. Pen. Code Ann. § 3.04(b). Therefore, even if Rogers
had obtained a severance of the charges, he would have been in no better position to
receive concurrent sentences than he was in the joint trial. See Burruss v. State, 20
S.W.3d 179, 187 (Tex. App.-Texarkana 2000, pet. ref'd). 

 There is another reason, however, why it may have been advantageous for Rogers
to seek a severance. If the cases had been tried separately, Rogers might have been able
to avoid having evidence admitted about the extraneous sexual acts he committed with J.J. 
The acts of digital penetration were committed on both girls during the same occurrence,
so evidence of those acts against J.J. would have been admissible as same transaction
contextual evidence, but other acts, such as the sexual intercourse with J.J., were with her
alone, and evidence of those acts could possibly have been excluded in a separate trial.

 However, Rogers has provided no evidence concerning his trial counsel's strategy
in not seeking a severance and in allowing evidence of the acts with J.J. to be admitted in
evidence. Rogers testified and freely admitted the sexual intercourse with both minor
victims. Rogers' primary defense was that E.B. was not young enough to make the offense
on her aggravated sexual assault and that the sexual acts with both girls were consensual. 
While consent could not be a legal defense, it conceivably could have been relevant and
persuasive for mitigation of the punishment. Rogers' trial counsel apparently wanted
Rogers to be open with the jury about all the sexual interplay with both girls in order to
show the jury that all of those acts were part of a pattern that was fully consensual. 
Defense counsel put in evidence that one of the girls, as well as her mother, did not want
to press charges against Rogers and did not believe he should be prosecuted.

 Moreover, Rogers' trial counsel may have decided that he could not prevail in a
challenge to the State's motion to consolidate the cases. Alternatively, he could have
chosen not to oppose the State's motion because he knew that Rogers planned to admit
committing the offenses. See Prudhomme v. State, 47 S.W.3d 683, 691 (Tex.
App.-Texarkana 2001, pet. ref'd). Under any of these situations, counsel's actions in not
seeking a severance would not be deficient. 

 Because Rogers has failed to show that his counsel's failure to seek a severance
or try to exclude the extraneous evidence relating to the acts with J.J. was not sound trial
strategy, he has failed to show that his counsel's representation was deficient in these
respects.

 Rogers also complains because his trial counsel pursued prejudicial testimony on
cross-examination. That testimony was elicited on defense counsel's cross-examination
of Rogers' former girlfriend after she nonresponsively stated that Rogers had raped her. 
Although counsel obtained an instruction to disregard the testimony, in light of the
likelihood that a jury would not actually forget such a statement, we do not find counsel
ineffective because he pursued that matter on cross-examination. He obtained an
admission by the girlfriend that she had tried to press charges against Rogers, but that a
grand jury had declined to indict him on the charge. We do not find counsel's acts in this
regard ineffective. 

 Appellate counsel also argues that trial counsel should have entered a guilty plea
since Rogers admitted on the stand that he was guilty of the charged acts. Under this
record, we cannot determine whether the admission was anticipated by his trial counsel,
or if he was trying to favorably impress the jury with Rogers' candor in order to lessen the
punishment. Further, Rogers did not admit that he had committed all of the acts that the
victims testified he did, so he did not make a complete admission in all respects. In these
circumstances, we cannot conclude that counsel was ineffective for failing to have his client
plead guilty rather than proceeding to trial. 

 Rogers also complains that his trial counsel was ineffective because he did not
request the court to provide a reasonable doubt instruction as part of the jury charge. The
Texas Court of Criminal Appeals has recently held that trial courts are now not required to
instruct juries on the definition of beyond a reasonable doubt, and that the better practice
is to give no definition to the jury. Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000). 
Consequently, trial counsel was not ineffective for failing to request such an instruction.

 The judgment is affirmed.


 William J. Cornelius*

 Justice


*William J. Cornelius, C.J., Retired, Sitting by Assignment


Date Submitted: June 3, 2002

Date Decided: August 1, 2002


Publish



 to
preserve error.

 Even if Bryant had made a timely objection to her resumption of the witness stand, there is
no direct, affirmative evidence in the record to show that Dalinda was present in the courtroom and
heard the testimony given by other witnesses, an evidentiary absence affirmed by Bryant's counsel
at oral argument. The trial court made a comment in response to Bryant's trial objection that
suggested the judge had not himself seen Dalinda present in the courtroom in violation of the witness
sequestration rule, (4) and Bryant brought forth no additional evidence or testimony (such as
questioning her about this issue during her rebuttal testimony) to substantiate this bare-bones
assertion. (5) Thus, Bryant would be unable on this record to satisfy his burden under the first prong
of the applicable analysis. See Wilson, 179 S.W.3d at 249 (setting forth test); Taylor, 173 S.W.3d
at 853 (appellant has burden on appeal to satisfy both prongs).

 We overrule Bryant's first issue.

II. Sheriff Reed's Double Hearsay Testimony

 In his second point of error, Bryant contends the trial court erred by permitting Reed to testify
about a statement made to him by Janie Walls Mussett regarding something that Bryant said to
Mussett. The State disagrees and maintains that the alleged error was not preserved for appellate
review. 

 If a party seeks to introduce testimony, it must first establish that such evidence is admissible
under our evidentiary rules. Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). "The
proponent of hearsay testimony must point to a hearsay exception before the court can admit such
testimony." Taylor v. State, 263 S.W.3d 304, 309 (Tex. App.--Houston [1st Dist.] 2007), aff'd, 268
S.W.3d 571 (Tex. Crim. App. 2008) (citing Perez v. State, 113 S.W.3d 819, 827 n.4 (Tex.
App.--Austin 2003, pet. ref'd)). The proponent of hearsay testimony has the burden of laying the
proper predicate and establishing its admissibility. Id. (citing Perez, 113 S.W.3d at 827 n.4). The
trial court must then determine the applicability of the proffered justification for the admission of
hearsay testimony and, if additionally requested, perform the requisite relevancy balancing test by
comparing the probative value of the hearsay testimony against its danger for unfair prejudice. See,
e.g., Massey v. State, 933 S.W.2d 582, 586-88 (Tex. App.--Houston [1st Dist.] 1996, no pet.); and
see Tex. R. Evid. 403.

 Ultimately, "[t]he admission of hearsay evidence is a question for the trial court to resolve
and we review its determination under an abuse of discretion standard." Maranda v. State, 253
S.W.3d 762, 769 (Tex. App.--Amarillo 2007, pet. dism'd); see Torres v. State, 71 S.W.3d 758, 760
(Tex. Crim. App. 2002); Mosley v. State, 141 S.W.3d 816, 830 (Tex. App.--Texarkana 2004, pet.
ref'd). A trial court abuses its discretion only when its determination of evidentiary admissibility or
inadmissibility falls outside the zone of reasonable disagreement. McCarty v. State, 257 S.W.3d
238, 239 (Tex. Crim. App. 2008); Mosley, 141 S.W.3d at 830; Breakiron v. State, 79 S.W.3d 103,
107 (Tex. App.--Texarkana 2002, no pet.). The improper admission of hearsay evidence "does not
constitute reversible error if the same facts are proved by other, properly admitted evidence." 
Maranda, 253 S.W.3d at 769 (quoting Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim. App.
1986)).

 During 1987, Mussett was dating Bryant, to whom she was subsequently married and then
divorced. In 2007, as part of his review of the case, Reed interviewed Mussett extensively. At trial,
the State asked Reed to testify regarding what he had learned from Mussett during that 2007
interview:

 Q [The State] Now who did you talk to next?

 

 A [Reed] At that point we started interviewing the other eye witnesses
that were there at the name [sic], saying Jonathan Victory. I talked to Janie Mussett,
who was Bill Bryant's live-in at that time, and started talking to the family members. 
We were able to talk to those people and get, you know, whether it be audio
statements or written statements that gave us probable cause to go ahead and get a
warrant for Mr. Bryant for capital murder as well.

 

 Q Now Janie Mussett, Janie Walls Mussett, the girl friend [sic], at one
point in the interview she states to you . . .

 

 [Defense Counsel]: Your Honor, we're going to object to leading
questions, first. He can testify to whatever he can testify to.

 

 THE COURT: Rephrase your question, Counsellor [sic].

 

 Q [The State] At some point in time did she put Bill Bryant there at the
scene as well?

 

 A Yes, she did.

 

 Q And did she inform you how she came about that knowledge?

 

 A She informed us that . . .

 

 [Defense Counsel]: Object to that as hearsay.

 

 [The State]: Offer it as a statement against penal interest, and under
38.36.

 

 THE COURT: The objection is overruled.

 

 Q [The State] Go ahead.

 

 A [Reed] Okay. In her statement she stated that Bill Bryant had told
her after the murders that he and Kenneth Raulston had killed Johnny Victor and
Sarah Raulston.

 

 Q And did he tell her something else at that time?

 

 A Yes, he made threats to her that if she was to tell anybody about that,
that--I can't remember the exact phrasing of it but that, you know, she ran the risk
of, you know, family members being hurt or she being hurt.


(Emphasis added.)

 Bryant lodged a proper and timely hearsay objection to Reed's testimony concerning
Mussett's statement to him. See Tex. R. Evid. 802. An analysis of Reed's testimony reveals that it
actually contains two layers of hearsay. "Hearsay included within hearsay is not excluded under the
hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule
provided in [the Texas Rules of Evidence]." Tex. R. Evid. 805. 

 The first layer of hearsay in this part of the testimony concerned what Bryant told Mussett. 
His statement to Mussett about his involvement in the murders constituted a statement against
Bryant's (the declarant's) penal interest. See Tex. R. Evid. 803(24). However, we then see that there
was a second layer of hearsay--the testimony that concerned what Mussett told Reed. In order to
fall within the exception of Rule 803(24), this second testimonial layer would have needed to
concern a statement made by Mussett against her own penal interest in this testimony. Mussett's
statement to Reed about Bryant's involvement in the murders would not constitute a statement
against Mussett's (the declarant's) penal interest under Rule 803(24).

 In this case, the second layer of hearsay did not constitute a statement against Mussett's penal
interest. (6) Mussett's statement that Bryant admitted involvement in the murders would not subject
Mussett to prosecution for those murders. Accordingly, this second layer of hearsay within Reed's
testimony now at issue did not satisfy the requirements to be excepted from the hearsay rule pursuant
to Rule 803(24). Therefore, the admission of Reed's double hearsay testimony was an abuse of the
trial court's discretion. Cf. Lopez v. State, 200 S.W.3d 246, 254-55 (Tex. App.--Houston [14th
Dist.] 2006, pet. ref'd) (trial court abused discretion by admitting double hearsay when part of
statement did not qualify under exception to hearsay rule); see also Rodgers v. State, 111 S.W.3d
236, 243-44 (Tex. App.--Texarkana 2003, no pet.); Robison v. State, 35 S.W.3d 257, 261 (Tex.
App.--Texarkana 2000, pet. ref'd). The usual next step would require us to evaluate this error for
harm. See Tex. R. App. P. 44.2(b) (nonconstitutional error); see also, e.g., Hernandez v. State, 176
S.W.3d 821, 824-25 (Tex. Crim. App. 2005).

 The State contends, however, that it is unnecessary for a harm analysis to be conducted
pertaining to this error because Bryant waived this second issue for appellate review by failing to
object to similar testimony from a subsequent witness, Mark Vandervlugt (an agent with the United
States Secret Service). "If a defendant objects to the admission of evidence but the same evidence
is subsequently introduced from another source without objection, the defendant waives his earlier
objection." Massey, 933 S.W.2d at 149.

 After the trial court erroneously admitted Reed's testimony regarding Bryant's admission to
Mussett, Vandervlugt testified also that Mussett had told him during an interview that Bryant had
confessed to her that he had committed the murders:

 Q [The State] When the interview, did [Mussett] start out not wanting
to tell the truth about what had happened?

 

 A [Vandervlugt] Correct. Prior to the interview, she understood she
was there voluntarily. She was free to leave at any point in time. Initially, she did
not want to tell the truth. I would say approximately two hours into the interview,
she became emotional. Told us that Bill Bryant had confessed to her that he shot . .
.

 

 Q Johnny Victory?

 

 A Johnny Victory and Sarah Raulston.

 

 Q And was the statement that was obtained from her, I'm assuming that
Texas Ranger Roger Laugh was the one that actually typed up the statement?

 

 A He was the one that physically took the statement, written statement.

 

 Q And was the statement read back to her, line by line?

 

 A That, I'm not sure. After she verbally confessed, the Ranger took a
written statement and once they started the written statement, I left.

 

 Q Okay. But you in fact heard her confess or tell you that . . .

 

 A Correct.

 

 Q . . . Bill Bryant had in fact shot and killed Sarah Raulston and Johnny
Victory?

 

 A Correct.

 

 Q And who are you employed by?

 

 A The United States Secret Service.


(Emphasis added.) Vandervlugt's testimony concerns what Mussett told investigators was said by
Bryant. Such testimony is clearly hearsay within hearsay. See Tex. R. Evid. 805. Like Reed's
earlier testimony, the second layer of hearsay (what Mussett told Vandervlugt that Bryant had told
to her) is not excluded from the hearsay rule by any exception (such as Rule 803(24)) because any
statement by Mussett about Bryant's involvement in the murders would not likewise implicate her
in those murders. Bryant, however, did not renew the hearsay objection he had previously raised
during Reed's substantially similar testimony. Therefore, because the substantively equivalent
testimony to which he had earlier objected was later admitted without objection, Bryant has not
preserved this issue for appellate review. See Massey, 933 S.W.2d at 149.

 We overrule this second point of error.

III. A Limiting Instruction Regarding Reed's Hearsay Testimony

 Bryant next contends the trial court erred by failing to instruct the jury that it should disregard
the portion of Reed's testimony that contained hearsay. The alleged hearsay testimony concerned
a statement made by Jonathan Victory (a third child of Johnny, who was not a witness at trial) to
Reed that was ultimately repeated by Reed before the jury. Bryant now asserts he (1) objected to this
hearsay testimony at trial and (2) asked for a jury instruction to disregard the hearsay testimony. 
Bryant contends on appeal only that the trial court erred by failing to promulgate the requested jury
instruction. The State asserts this alleged error was not preserved for appellate review. 

 We review a trial court's decision to admit or exclude evidence under an abuse of discretion
standard. Marshall v. State, 210 S.W.3d 618, 631-33 (Tex. Crim. App. 2006). A trial court abuses
its discretion if its decision to admit or exclude evidence falls outside the zone of reasonable
disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). 
If a trial court rules that testimony heard by a jury should be excluded from the jury's consideration,
the trial court should then (either upon request or sua sponte) direct the jury to disregard the at-issue
testimony. Lollis v. State, 232 S.W.3d 803, 810 (Tex. App.--Texarkana 2007, pet. ref'd); Mitchell
v. State, 191 S.W.3d 219, 223 (Tex. App.--San Antonio 2005, no pet.). Alternatively, should the
trial court determine that the at-issue evidence may be admitted and considered by the jury only for
a limited purpose, the trial court should give the jury an appropriate limiting instruction. Tex. R.
Evid. 105; Thacker v. State, 999 S.W.2d 56, 61 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd).

 "A defendant is entitled to an instruction limiting the jury's use of an extraneous offense not
only in the jury charge but also at the time the evidence is admitted, if such an instruction is timely
requested by the accused." Pedersen v. State, 237 S.W.3d 882, 887 (Tex. App.--Texarkana 2007,
pet. ref'd) (quoting Rankin v. State, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996)). "The failure to
give such an instruction at the time the evidence is admitted is error when such an instruction has
been requested." Id. However, the requirement for a limiting instruction first presumes the trial
court should have admitted the at-issue evidence. See, e.g., id. at 888.

 If the trial court erred by admitting the at-issue evidence and if the trial court did not issue
a properly requested limiting instruction, such error will not result in reversal of the appellant's
conviction unless the reviewing court is convinced that the error affected the appellant's substantial
rights. Id.; see also Tex. R. App. P. 44.2(b). This is because an error in the admission or exclusion
of evidence (coupled with the failure to give a properly requested limiting instruction) is
nonconstitutional error, review of which requires the overruling of the issue, despite such error, so
long as "the appellate court, after examining the record as a whole, has a fair assurance that the error
did not influence the jury, or had but slight effect." Rankin v. State, 995 S.W.3d 210, 215 (Tex.
App.--Houston [14th Dist.] 1999, pet. ref'd); see Tex. R. App. P. 44.2(b). 

 The specific exchange, now presented in the context in which it was heard by the jury, was
as follows:

 Q [The State] And when you spoke with Jonathan Victory, did that give
you more reason to focus in on Bill Bryant as well?

 

 A [Reed] Yes, Jonathan, he mainly focused on Mitchell Dickey;
however, he did say that, you know, there was other people there and he believed that
Bill Bryant was one of those people.

 

 [Defense Counsel]: Judge, we're going to ask that the jury be
instructed to disregard that answer as nonresponsive. You know, I'm not sure what
was done. I'm not sure if he's testifying for other witnesses or something.

 

 [The State]: These witnesses are available and will testify.

 

 [Defense Counsel]: Well, and that's what they should do.

 

 [The State]: He's testifying about what his investigation revealed to
him.

 

 [Defense Counsel]: Well, he's trying to testify about what people may
or may not have told him.

 

 THE COURT: All right, rephrase your question, Mr. Varley, to
personal knowledge.

 

 Q What else did y'all do after you talked to Stella--not Stella--Janie
Walls and Jonathan Victory? Did you attempt to talk to Stella Victory?

 

 A We went and tried to locate her and found that she passed away a year
or two or three years previously to when we tried to locate her.


(Emphasis added.) 

 The trial court impliedly sustained Bryant's rather vague hearsay objection by ordering the
State to rephrase its question. Bryant did not request that the jury be instructed to disregard hearsay. 
Instead, Bryant's limiting instruction request to the court went only to the issue of nonresponsiveness.

 We do not believe the appellate record supports the view that the trial court was given an
opportunity to address the issue now being raised on appeal. If the complaint (such as the failure to
give a limiting instruction) was not first requested at the trial level, and if that request was not
pursued to an adverse ruling, then the appellant has preserved nothing for our review. Rankin, 995
S.W.2d at 215; see also Gone v. State, 54 S.W.3d 27, 31-32 (Tex. App.--Texarkana 2001, pet. ref'd)
(appellant's untimely request for limiting instruction preserved nothing for appellate review).

 We conclude that Bryant did not preserve this issue for appellate review. (7)

IV. Ineffective Assistance

 Bryant next contends that his trial counsel provided ineffective assistance because trial
counsel (a) failed to object to the State having been allowed to treat Mussett as a hostile witness,
(b) failed to object to inadmissible hearsay testimony by Mussett; (c) failed to object to the admission
of impeachment evidence against Mussett, (d) failed to object to admission of testimony about
polygraph results for two different witnesses, (e) failed to object to the State's improper closing
argument in more than one instance, and (f) failed to object to the admission of other hearsay
evidence.

 To prevail on a claim of ineffective assistance, Bryant must demonstrate both (1) that trial
counsel acted unreasonably under prevailing professional norms and (2) that this failure resulted in
his having suffered actual prejudice. Strickland v. Washington, 466 U.S. 668, 688 (1984); Acosta
v. State, 233 S.W.3d 349, 352 (Tex. Crim. App. 2007). When, as here, ineffective assistance is
raised on direct appeal, appellate counsel and the court must proceed on a trial record not developed
for the object of litigating or preserving the claim and thus often incomplete or inadequate for this
purpose. Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); cf. Massaro v. United
States, 538 U.S. 500, 504-05 (2003). Nonetheless, some claims may be disposed of on direct appeal
where "trial counsel's ineffectiveness is so apparent from the record." Massaro, 538 U.S. at 508;
Freeman, 125 S.W.3d at 507; see also Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim. App.
2005); Thompson v. State, 9 S.W.3d 808, 814 n.6 (Tex. Crim. App. 1999). "[W]hen no reasonable
trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective
standard of reasonableness as a matter of law, regardless of whether the record adequately reflects
the trial counsel's subjective reasons for acting as she did." Andrews, 159 S.W.3d at 102. A claim
of ineffective assistance of counsel, on an undeveloped record on direct appeal, should, nonetheless,
"be entertained and upheld if supported by the record." Fuller v. State, 224 S.W.3d 823, 828-29
(Tex. App.--Texarkana 2007, no pet.); see Oldham v. State, 977 S.W.2d 354, 360 (Tex. Crim. App.
1998). If the record on direct appeal is inadequate, habeas corpus is the more appropriate avenue
for developing the record on this issue. Moore v. State, 227 S.W.3d 421, 426 n.1 (Tex.
App.--Texarkana 2007, pet. ref'd). Moreover, if the appellate court can imagine a strategic motive
to explain the ineffective assistance claim, then the reviewing court may not sustain the appellant's
point of error. Freeman, 125 S.W.3d at 511 (citing Bone v. State, 77 S.W.3d 828, 833 n.13 (Tex.
Crim. App. 2002)). (8)

 A. Allowing the State To Lead Mussett on Direct Examination As a Hostile Witness


 Bryant first argues that his trial counsel provided ineffective assistance because counsel did
not object to the State having been allowed to treat Mussett as a hostile witness. Bryant asserts that
the State knew before she took the stand that Mussett would become hostile, that Mussett would
testify in a manner that was inconsistent with an earlier statement she gave to law enforcement (a
statement in which she said Bryant had admitted to her his commission of the murders), and that (in
reality) the State's sole purpose in calling Mussett was so that they could have the substance of that
prior statement to law enforcement admitted as substantive evidence of Bryant's guilt since such a
statement would be admissible as a prior inconsistent statement made by Mussett. 

 A party's request to treat a witness as hostile may arise from the realization that the witness
would no longer be cooperative as expected. If the trial court faces a situation in which (1) a party
has called a witness to testify, (2) that witness's testimony has surprised the sponsoring party, and
(3) that testimony is otherwise injurious to the sponsoring party's cause, then the trial court has the
discretion to permit the sponsoring party to treat the witness as hostile. See Tex. R. Evid. 611(a) &
(c) (trial court shall exercise reasonable control over mode and order of interrogation of witnesses);
and cf. Wyatt v. State, 23 S.W.3d 18, 28-29 (Tex. Crim. App. 2000) ("permitting leading questions
on direct examination is a matter within the sound discretion of the trial court").

 The State called Mussett to testify in its case-in-chief. The record shows that Mussett had
previously given a sworn statement to law enforcement officials in which she inculpated Bryant in
these murders. When it became apparent that Mussett would give testimony that was inconsistent
with her earlier sworn statement, the State asked Mussett if she recalled making a statement in which
she gave a factual account that was remarkably different from her trial testimony. Mussett answered,
"Sir, a lot of things I said in that statement is [sic] not true, because I was scared." The State then
asked permission from the trial court to treat Mussett as a hostile witness by asking leading
questions. The trial court granted that request and Bryant's trial counsel did not object to that ruling. 

 The appellate record is silent regarding trial counsel's reasons for not objecting to the State's
request to treat Mussett as a hostile witness. Nevertheless, in such a situation, Bryant's trial counsel
might have reasonably chosen to not object so as not to bring any additional attention to Mussett's
damaging testimony. See, e.g., Castoreno v. State, 932 S.W.2d 597, 603 (Tex. App.--San Antonio
1996, pet. ref'd) ("possible that counsel made a conscious decision not to object to the use of the
police report, as an objection would have drawn attention to relatively harmless evidence"). Such
a tactical decision might be part of a well-reasoned trial strategy. See id.; cf. Brasher v. State, 139
S.W.3d 369, 372 (Tex. App.--San Antonio 2004, pet. ref'd). Alternatively, Bryant's trial counsel
may have reasonably believed the trial court's decision to allow Mussett to be treated as a hostile
witness was within the trial court's discretion and was not the product of bad faith by the State. 
Bryant's trial counsel had the opportunity to gauge the jurors' reactions to Mussett's obvious hostility
and he may have determined that those reactions were unfavorable for the State; relying upon those
observations, he could have made the strategic decision not to interfere with the State's efforts at
discrediting its own witness under the belief that destroying Mussett's credibility would be helpful
to Bryant's case. Any of these reasons might explain a strategic motive behind this claimed instance
of ineffective assistance. Thus, we may not sustain Bryant's point of error on this issue. See
Freeman, 125 S.W.3d at 511. (9)

 B. Admission of Mussett's Sworn Statement (State's Exhibit 39)

 Bryant next contends that his trial counsel rendered ineffective assistance because counsel
failed to object to the admission of Mussett's statement to police. Bryant claims this statement
contained inadmissible hearsay. The at-issue statement was State's Exhibit 39, Mussett's previous
sworn statement. 

 The record shows that Bryant's counsel did object to the admission of this statement as a
violation of the hearsay rule. Before the trial court admitted the exhibit, Bryant's trial counsel stated,
"Your Honor, we would object as hearsay, not the best evidence." The trial court then overruled the
hearsay objection to State's Exhibit 39. 

 Because the record refutes Bryant's claim that his trial counsel failed to object to State's
Exhibit 39, we find no merit to this assertion of ineffective assistance.

 C. Failure To Request a Limiting Instruction Regarding State's Exhibit 39

 Bryant next complains that his trial counsel rendered ineffective assistance by failing to
request a limiting instruction regarding the admission of the sworn statement given by Mussett to
investigators (State's Exhibit 39). The reporter's record shows the State offered Exhibit 39 pursuant
to Rule 613(a) of the Texas Rules of Evidence. At trial, Mussett specifically denied that Exhibit 39
was truthful. The State then offered Exhibit 39 into evidence to impeach her. See Tex. R. Evid.
607. The relevant portion of Exhibit 39 included the following:

 Maybe a month later, Bill and I were at Stella's house where we were staying because
our trailer house had burned. Stella was drinking and crying. Stella told me that
Kenneth told her me [sic] that Thomas Stringer, Jim Ed Monkhouse, Lewis Perkins,
Bill and Kenneth had killed Johnny and Sarah. About a week later, Bill and I were
in our bedroom. Bill said, "Me and Kenneth went to Kenneth and Sarah's house and
shot and killed Johnny and Sarah." Bill also told me that there was a third shooter
there but he did not tell me who the third person was. After Bill told me this, Bill told
me that if I ever told anyone that he and Kenneth killed Johnny and Sarah, he would
hurt me. I understood this to mean that he would hurt me, my children and my
family. [Paragraph initialed by Mussett.]

(Emphasis added.)

 The thrust of Bryant's complaint of ineffective assistance is that his trial counsel should have
requested an instruction directing the jury to confine its consideration of Exhibit 39 to whether that
exhibit discredited Mussett's live witness testimony and, further, that the jury was to consider
Exhibit 39 for no other purpose (such as substantive evidence of Bryant's guilt).

 "A defendant is entitled to an instruction limiting a jury's use of an extraneous offense not
only in the jury charge but also at the time the evidence is admitted if such an instruction is timely
requested by the accused." Pedersen, 237 S.W.3d at 887 (quoting Rankin, 974 S.W.2d at 713). 
When evidence is properly admitted for one purpose, but can have meanings and uses beyond that
proper purpose, "the trial court may--and should--immediately define and limit the jury's ability to
consider such evidence to only those areas which are permitted under our Rules of Evidence." Id.
at 888.

 While many attorneys might have prudently requested such a limiting instruction, see, e.g.,
Boyd v. State, 774 S.W.2d 37, 41-42 (Tex. App.--Beaumont 1989, pet. ref'd) (request for limiting
instruction denied), it is equally possible that other reasonable and conscientious attorneys would
have wanted Exhibit 39 available for consideration by the jury for a wider variety of reasons--such
as substantive evidence to support Bryant's defensive theory that all the State's witnesses had been
brow-beaten or intimidated by police investigators and federal agents into giving false statements
implicating Bryant. Further, if the trial court had issued the limiting instruction now advanced by
Bryant, the jury would have been unable to permissibly consider the impact that Exhibit 39 would
have had in support of this defensive theory advanced by Bryant throughout this trial. It should be
remembered that Vandervlugt had already testified that Mussett did not come forth with any of these
details until after she had endured two hours of interrogation by the Secret Service agent, and
Mussett testified that she was intimidated into giving the statement against Bryant. Bryant's trial
counsel might have decided that admission of State's Exhibit 39, without limitation, was necessary
and relevant to Bryant's overarching defensive theory that the State's case was the product of
fabrication and conspiracy.

 Because we can imagine a reasonable, strategic reason to explain the complained-of conduct,
we cannot say the appellate record will support Bryant's contention of ineffective assistance.

 D. Polygraph Results

 Bryant next complains that his trial counsel provided ineffective assistance by failing to
object to two different references to the results of polygraph examinations. The Texas Court of
Criminal Appeals has consistently ruled that polygraph results are generally inadmissible for any
purpose. Crawford v. State, 617 S.W.2d 925, 930 (Tex. Crim. App. 1980); Lewis v. State, 500
S.W.2d 167, 168 (Tex. Crim. App. 1973) (referencing Pulakis v. State, 476 P.2d 474, 477-78
(Alaska 1970)). 

 The first reference to a polygraph examination came during Reed's testimony. Reed was
discussing a polygraph examination administered by Vandervlugt to Dickey. Reed told the jury:

 A [Sheriff Reed] I talked to [Mitchell Dickey] again a day or two later,
and he got emotional while he was talking to us that time, so I asked him would he
take a polygraph test. He agreed that he would do anything he could to help us on the
case.

 

 Q [The State] Okay.

 

 A So we set up a polygraph test with a Secret Service agent from Irving. 
Agent came down, interviewed Mitchell, set him up for a polygraph test. Mitchell
Dickey took the polygraph test and at that time he failed it. We reinterviewed
him . . .

 

 Q The way he failed it was he said he didn't have any knowledge of [the
murder], he wasn't present [at the murder]?

 

 A Correct. Correct. You know, he indicated deception when he
answered that he didn't have any knowledge of the crime. We proceeded with the
interview, told him that, you know, he failed, and at that point he said, "Pull up a
chair," you know, and he began to confess and tell the details of the crime.

 

 Q Okay, and he confessed up to the point when they went by him with
a gun, or . . .

 

 A He confessed to the point of saying that he was there with Kenneth
Raulston and Bill Bryant, and that he was on the edge of the property and didn't
participate in the actual shooting, but he was there and witnessed the whole event.


(Emphasis added.) 

 The second reference to a polygraph examination (and the examination's results) were made
by the district attorney prosecuting this case at trial. The State's comment came amidst a speaking
objection to a question asked of Vandervlugt on cross-examination. (10) The State's attorney stated,
"Your Honor, I'm going to object at this time. There's a federal law that prevents [Vandervlugt] from
talking about what was performed on her at that time, the polygraph test." 

 The State suggests Bryant's trial counsel may have made the strategic decision to not object
to these references to failed polygraph tests in hopes that the jury might use these failures as
justification to not believe Dickey's or Mussett's testimony about anything to which they had
testified. We agree that such a strategy is one among the wide range of professional norms that
might seem reasonable. Accordingly, we cannot say this record, which is otherwise silent regarding
trial counsel's failures to object to these polygraph examination references, will support a finding of
ineffective assistance under Strickland's first prong. (11)

 E. Failure To Object to the State's Closing Argument

 Bryant also contends his trial counsel provided ineffective assistance by failing to object to
two improper comments made by the State during its closing argument. Jury argument should be
limited in scope to (1) a summation of the admitted evidence, (2) reasonable deductions from the
admitted evidence, (3) answers to the argument of opposing counsel, and/or (4) pleas for law
enforcement. Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997). Attorneys are granted
"wide latitude in drawing inferences drawn from the evidence so long as the inferences are
reasonable and offered in good faith." Id. (referencing Gaddis v. State, 753 S.W.2d 396, 398 (Tex.
Crim. App. 1988)). "In determining whether jury argument is extreme or manifestly improper, we
look at the entire record of final arguments to determine if there was a willful and calculated effort
on the part of the State to deprive appellant of a fair and impartial trial." Id. (quoting Johnson v.
State, 604 S.W.2d 128, 135 (Tex. Crim. App. [Panel Op.] 1980)).

 (1) Comments on Bryant's Demeanor During Trial

 The first complained-of instance arose during the State's opening summation of the evidence:

 Let me tell you something else. Not only can you watch what happens on this
stand and get the demeanor of people. You have the right to sit here and watch this
fellow here when he's sitting there. And I don't know if any of you saw it, maybe
some of you did, but when we were showing you pictures of the dead people, you
know who was smiling in the courtroom? Do you know what that tells--that tells me
something when you're looking at pictures of deceased people and he's getting a kick
out of it.


 You can take that all into consideration, too, when you decide he's guilty. 
Because after hearing all this evidence, even after twenty-one years, folks, we can
still come in here and put him away, but we've got to have your help. And the big
deal is that you have to be strong, too.


(Emphasis added.)

 "[A] prosecutor may not properly comment upon the defendant's demeanor in the courtroom,
since the defendant's demeanor in the courtroom is not evidence of guilt." Wead v. State, 129
S.W.3d 126, 130 n.8 (Tex. Crim. App. 2004) (quoting Good v. State, 723 S.W.2d 734, 737 (Tex.
Crim. App. 1986)). The State's comment to the jury about Bryant smiling during the presentation
of the pictures depicting the dead victims was patently improper. Such behavior runs precipitously
close to the line between a fair trial and a mistrial, depending on how the trial court chooses to
exercise its discretion if faced with a meritorious motion for mistrial by defense counsel.

 In this case, it is possible that Bryant's trial counsel did not wish to draw further emphasis
to the State's improper remark by lodging a contemporaneous objection, especially in light of the trial
court's written instruction that the jury was to consider only the evidence that was properly admitted
by the trial court. Cf. Dickerson v. State, 87 S.W.3d 632, 638-39 (Tex. App.--San Antonio 2002,
no pet.) (silent record would not support finding of ineffective assistance regarding prosecutor's
patently improper closing remarks where defendant had opportunity to develop ineffective assistance
claims in motion for new trial but failed to do so); Castoreno, 932 S.W.2d at 603 (possible that
counsel decided to not object because objection would have emphasized evidence). 

 (2) Vouching for Witnesses

 The second complained-of instance came during the State's closing summation:

 Well, if you believe the defendant's lawyer, I guess I got together with all the law
enforcement people in the Sheriff's office and the Texas Rangers and even reaching
into the office of the Secret Service, and we had a big conspiracy, going to bring
everybody in here and tell a lie, because everybody, he said, that got on the stand told
y'all a lie, and we thought we would just throw a big trial and see if we couldn't get
this guy convicted, although my job is [sic] a prosecutor is not prosecution. Number
one, it's to see that justice is done, so we're all going to get together, if you believe
what he's telling you, and get all these people to lie and then bring it in here and tell
it to you.


 You think that would fly? You think we're going to get into the Secret
Service and the Texas Rangers and the Sheriff's office, and go even back in time with
Jerry Conway and everybody, back in that time, and get everybody to come up here
and lie to you?


 These folks told you the truth. And he talked to you about, you know, maybe
a thousand times. Well, now they're here telling the truth, and I hope you believe
they're telling the truth because they are telling you the truth at this point in time.


 Who has got something to lose? They don't have anything to gain by seeing
this guy go to prison, other than the right to know that the guy that killed their daddy
is in prison. They talked about Mitchell Dickey being the lynchpin of the case. He's
really not. We could have stopped with Aaron [Victory]. I could have rested after
Aaron, and the law would say that's factually sufficient to put him away for the rest
of his life. That was enough for y'all to find him guilty, when Aaron said this is the
guy that killed my daddy. So we need to think about that when you look at the big
picture.


 Not only do we have Mitchell. He is--you know, you wonder why he passed
the--or failed the lie detector test this time? Maybe it's because he has a conscience
now, and that's what those things work off of? If you have a conscience and you lie,
you start sweating and your heart rate goes up and you flunk. And now he has a
conscience and back then he didn't, and that's the reason he failed it this time when
he has a conscience; and now he's here trying to let you know, hey, this is what
happened.


 Yeah, he'll benefit some. I'm not going to sit here and deny it. He may not
be telling you the whole truth, but I sure think he set the scene and put Bill Bryant
there. I believe Bill Bryant was there. You should. Kids put Bill Bryant there. 
There is no doubt he was hanging out, they was [sic] all together talking about killing
them. And she said who is Tom on the tape, well, Tom is Bill. Tom is Bill. And I
guess people can only stand being called a liar so long.


(Emphasis added.) Bryant argues about the above-emphasized passages, "The State's commentary
of inappropriate bolstering/vouching about the credibility of its witnesses was not invited." Bryant
also complains that the State should not have been permitted to interject his personal assessment of
witness credibility into the trial. 

 We generally agree that a prosecutor should not interject his personal assessment of witness
credibility into closing argument. Instead, a prosecutor should confine summation to the four proper
areas of closing argument. In this case, however, Bryant's trial counsel might have made the decision
not to object to the State's comments in summation because counsel had concluded that such
comments were, in fact, made in response to counsel's own closing argument. For example, in his
closing argument, Bryant's trial counsel argued,

 [Reed] also told you that in regard to Mr. Dickey's statement and regard to
Janie's statement, yeah, nobody--there were no more tests administered. Once there
was something about Bill Bryant, then we didn't need to check those any more.


 Dalinda Claborn? I agree, she was obviously upset. You know, how would
you like to have it dredged up another twenty-one years down the road? Nobody
would. That had to be incredibly difficult, and I do appreciate that. I also
appreciate the fact that she has said well, it was Kenneth and it was Tom. She has
said it was nobody. She has said I don't know who it was, and then she says I just
don't know. I don't know. Under oath, she says I don't know.


 . . . .


 Janie Mussett, been out of Bill Bryant's life for years. Eighteen years,
nineteen years. The State knew that she had changed her testimony, was going to
change her testimony. When they voir dired, they talked about recanting testimony. 
Means changing it. She had never testified. She had never testified under oath. She
got up here, took the oath to tell the truth, and said that statement is not right. Here
is what's right. And that takes a lot of nerve as far as I'm concerned.


 . . . . 


 You know, we talked about coercion. I think coercion is kind of in the eyes
of the beholder. So you've got a United States Secret Service special agent read you
your Miranda rights. You've got a Texas Range[r]. You've got a Sheriff in the room
with you. You're a woman who is on parole, afraid you might go back to the
penitentiary, operating at a third grade level. Do you really think, yeah, I could just
jump up here and leave any time I want to? [She] [s]tayed there six hours.


 I'm not much of a conspiracy believer, but it is kind of curious to me that they
got a videotape of all that going on except for the statement when it was signed and
except where she supposedly gave them that information. That's a concern to me, as
to whether or not she believed she was coerced.


(Emphasis added.) 

 While the appellate record does not indicate why Bryant's trial counsel failed to object to the
State's inappropriate closing argument, it is at least possible that counsel made the strategic decision
not to object, rather than risk having his objection overruled by the trial court if the court viewed the
State's argument as responsive to defense counsel's own summation. We, therefore, are foreclosed
from sustaining Bryant's Strickland claim of ineffective assistance in this instance.

 F. Failure To Object to the Admission of Hearsay Evidence

 Finally, Bryant contends his trial counsel provided ineffective assistance by failing to object
to the admission of otherwise inadmissible hearsay evidence during Dalinda's rebuttal testimony. 
The entirety of Bryant's argument on this subissue is as follows:

 During her rebuttal testimony, Dalinda changed her testimony incriminating
Mr. Bryant. . . . In explaining her reversal, Dalinda explained that her mother always
tried to convince her that Mr. Bryant was not involved. . . . Then the State asked
Dalinda, "[b]ut she (Stella Victory, Dalinda's mother) later told Jonathan that it was
(Mr. Bryant). Dalinda replied, "Yeah. Yeah, and-well, I can't say that, but anyway,
yeah." First, defense counsel should have objected to the State's question because it
called for hearsay testimony. Further, if Dalinda did respond over the objection,
defense counsel should have asked the trial court for a motion to disregard her
statement. From Dalinda's response, jurors may have thought that Ms. Victory told
Jonathan that Mr. Bryant was involved in the offense.


(Bryant's internal record citations have been deleted.)

 We do not believe the above-referenced testimony clearly shows Dalinda agreed with the
State's assertion. Instead, she seemed to actually deny that her mother said to Jonathan that Bryant
had been involved in the murders. Dalinda then followed that denial with a phrase from
contemporary jargon--"but anyway, yeah"--a phrase that often means something of tacit
disagreement with the other person's point of view, but amounts to disagreement being expressed
in a way so as not to convey a sense of disagreeableness.

 If one views Dalinda's testimony on this issue as something that equated a rejection of the
State's factual assertion, then such testimony did not cause harm to Bryant's case and would not
support a finding of ineffective assistance under Strickland's second prong.

 G. Cumulative Error

 Finally, Bryant contends the cumulative effect of the preceding four issues resulted in the
denial of constitutional due process. The entirety of the argument found in Bryant's briefing of this
issue follows:

 The Court of Appeals has recognized the number of errors may be found
harmful in their cumulative effect. See Chamberlain v. State, 998 S.W.2d 230, 238
(Tex. Crim. App. 1999). Mr. Bryant respectfully submits to this Court that the
cumulative effect of all of the above alleged errors (applicable to both trial court and
trial counsel) has denied him due process and due course of law. Even if none of the
errors alone rise to the magnitude of a constitutional breach, their cumulative effect
does. As such, Mr. Bryant asserts there is reversible error in this matter.

 Our review of Bryant's first four issues reveals no reversible error. We similarly do not
believe that these issues, when viewed cumulatively or in the aggregate, demonstrate reversible error. 
The Texas Court of Criminal Appeals stated in Chamberlain that "It is conceivable that a number
of errors may be found harmful in their cumulative effect. But, we are aware of no authority holding
that non-errors may in their cumulative effect cause error." 998 S.W.2d at 238. To the extent that
Bryant has or has not adequately briefed this issue, we do not believe the record before us suggests
the trial court denied him due process under the Federal or State Constitutions on the basis of the
cumulative effect of the other assertions of error raised in this appeal.

 We overrule each of Bryant's points of error and affirm the trial court's judgment.





 Bailey C. Moseley

 Justice


Date Submitted: February 11, 2009

Date Decided: March 13, 2009


Publish

1. According to evidence presented at trial, the kids were spared only because they promised
never to identify the killers to anyone, including law enforcement.
2. Apparently Dickey had been a murder suspect in 1987, but authorities felt there was
insufficient evidence at the time to obtain a conviction for the weightier crimes.
3. See Tex. Penal Code Ann. § 19.03 (Vernon Supp. 2008).
4. The trial court stated,


 The Court also would point out that this courtroom has been unusually full of
spectators, parties of interest, you know, that are interested in the outcome of the
case, as well as just public--the general public who have been attending the course
of the trial. You know, and as far as even from the Court perspective as far as
specifically being able to identify an individual seated out in the courtroom, it is
difficult with the numbers of people that were here.


This statement suggests to us that the trial court had not personally observed Dalinda in the audience
gallery during the testimony of the other witnesses during the previous day's proceedings.
5. For example, in Delapaz v. State, 229 S.W.3d 795, 801 (Tex. App.--Eastland 2007), rev'd
on other grounds, No. PD-1168-07, 2008 WL 2437648 (Tex. Crim. App. June 18, 2008), the trial
court conducted a short hearing to determine whether the at-issue witness had heard the testimony
of other witnesses. No similar intermediate hearing was requested by Bryant or conducted by the
trial court in this case.
6. A statement against penal (or, more properly, "pecuniary") interest is one that would subject
the declarant to prosecution based on his admission in that statement to having committed a crime. 
See, e.g., United States v. Watson, 525 F.3d 583, 586 (7th Cir. 2008), cert. denied, __ U.S. __, 129
S.Ct. 972 (2009); Walter v. State, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008).
7. Bryant also suggests in his brief that the trial court's failure to provide a limiting instruction
violated his Sixth Amendment right to confront Jonathan as a witness whose testimony was being
used against him by the State. Bryant did not first raise this Crawford claim with the trial court. The
claim has, therefore, not been preserved for appellate review and is overruled as such. See Crawford
v. Washington, 541 U.S. 36 (2004); cf. Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005);
Rios v. State, 263 S.W.3d 1, 6-7 (Tex. App.--Houston [1st Dist.] 2005, pet. dism'd); Bunton v.
State, 136 S.W.3d 355, 369 (Tex. App.--Austin 2004 pet. ref'd).
8. In the review of claims of inadequate counsel, it has been said that "the presumption that
trial counsel's performance was reasonably based in sound trial strategy, coupled with the absence
of any supporting evidence in the record of unreasonableness, compels a reviewing court to consider
ways in which trial counsel's actions were within the bounds of professional norms." Mata v. State,
226 S.W.3d 425, 431 (Tex. Crim. App. 2007). Further, "The court of appeals must hand down a
written opinion that is as brief as practicable but that addresses every issue raised and necessary to
final disposition of the appeal." Tex. R. App. P. 47.1. If we are to consider ways in which specific
acts or omissions on the part of trial counsel might conceivably be deemed to be within the bounds
of professional norms, we not only must consider those factors, we must also include an analysis of
that consideration in the opinion we deliver. 
9. We also note that our Rules of Evidence permit a party to impeach its own witness. Tex.
R. Evid. 607. Therefore, to the extent that Bryant's complaint on this issue might reasonably
encompass a claim that his trial counsel provided ineffective assistance by not objecting to the State's
attempt to impeach its own witness through leading questions regarding an earlier inconsistent
statement, such is expressly permitted under our Rules and would not support a finding of
ineffectiveness.
10. A "speaking objection" is "[a]n objection that contains more information (often in the form
of argument) than needed by the judge to sustain or overrule it. Many judges prohibit lawyers from
using speaking objections, and sometimes even from stating the grounds for objections, because of
the potential for influencing the jury." Black's Law Dictionary 1103 (8th ed. 2004). Prosecutors
should avoid using an evidentiary objection to inject new facts into the record when such assertions
are otherwise unsupported by properly admitted evidence.
11. However, trial prosecutors--especially elected district attorneys--should always consider
that their statutory mandate is "to see that justice is done." Tex. Code Crim. Proc. Ann. art. 2.01
(Vernon 2005). We question whether repeatedly referencing the forbidden subject of polygraphs and
lie-detector examinations (as well as the results of such testing) advances that noble obligation.