**Earl Leroy ROBISON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00037–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Dec. 20, 2000.

Decided Dec. 21, 2000.

259

R. Wesley Tidwell, Moore, Payne, Clem, Rodgers, Paris, for appellant.

Karla R. Baugh, Asst. County Atty., Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION

ROSS, Justice.

Earl Robison appeals from his conviction by a jury of the offense of indecency with a child. He was sentenced to twenty years' imprisonment. Robison contends that the trial court erred by admitting hearsay testimony of his alleged confession to his wife and by admitting extraneous offense evidence of sexual abuse (twenty

years earlier) of a different daughter. He also contends that he received ineffective assistance of counsel at trial in connection with a claim of jury misconduct.

Robison was charged with indecency with a child. He is married to a woman with twin girls who were ten at the time of trial, eight at the time of the initial interviews, and six at the time of the alleged indecent acts. In his brief, counsel states that Amy stated in her audiotaped interview with a Child Protective Services (CPS) worker, which was played for the jury, that when she was six years old her stepfather had touched her in private places, but that he had said he would never do it again and he never did. She also said that he accidentally did it to her twin sister, Anna. Anna steadfastly denied any such touching occurred. Amy stated that after she told her mother, there was no recurrence.

CPS workers also interviewed their mother, Charlotte, but did not record the interview. CPS worker Kay Long testified that Charlotte stated the girls had told her about the abuse, that it was a long time ago, and that she had confronted Robison about it and he had promised her it would not happen again, and that she regularly questioned the girls and monitored the situation to ensure that there was no recurrence. There was no objection to this testimony.

At trial, Amy testified that the touching was an accident and that it happened because his hand slipped while he was tickling her. She also testified, however, that he touched her privates.

Police detective Danny Huff testified that he also interviewed Charlotte and that she told him her daughters had come to her and told her what happened, that she had confronted Robison and he admitted touching them and promised not to do it again, and that she had checked with the girls regularly and there had been no recurrence for the past two years.

In testimony which Robison contends was improperly admitted, his adult daughter by an earlier marriage (who is now in her thirties) testified that he had sexually abused her from ages five to seventeen and that the abuse was sometimes preceded by tickling.

Robison first contends that the trial court erred by allowing Huff to testify over objection that Charlotte had told him Robison had admitted to her that he had touched her daughters and promised not to do so again. Robison raised a hearsay objection at trial. The State countered by arguing that the testimony fell within the exception of TEX.R. EVID. 803(24) as a statement against the interest of the defendant.

The rule provides that testimony, though hearsay, is not excluded if it is:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

■ Before such testimony is admissible, the witness testifying must have firsthand knowledge of the party's admission. *Hughes v. State*, 4 S.W.3d 1, 6 (Tex.Crim. App.1999). The State admits this is correct, but argues that the testimony is nonetheless directly admissible because it tends to subject Charlotte to "hatred, ridicule, or disgrace" or that it might subject Charlotte to liability for failing to report child abuse. This position is the same one taken by Justice Sharon Keller in her dissent to the *Hughes* opinion and discussed by the majority in footnote ten to that

opinion. In the footnote, the majority reviewed that argument and found it wanting, because even though those statements by the mother that she was aware that a child had been abused but had not reported it qualified as statements against her interest, her statements regarding Hughes' alleged admission of guilt were not made against her interest—those statements were against Hughes' interest.

The court therefore concluded that the testimony by the social workers that the mother had told them the father had admitted wrongdoing to her was inadmissible hearsay. The State also adopts Justice Keller's argument and argues (although without ever stating the phrase) that the statement was admissible as "hearsay within hearsay." In connection with that argument, the rules provide, "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." TEX.R. EVID. 805.

To be admissible under this theory, the testimony of the police officer must be justified on two levels: (1) as to appellant's statements, and (2) as to the wife's statements.

█ Robison's statements to his wife are clearly either an exception to the hearsay rule as a statement against interest or are party-opponent admissions, which are not defined as hearsay. A statement is not hearsay if the statement is offered against a party and is his own statement. TEX.R. EVID. 801(e)(2)(A). Had Robison's wife testified in court about his statements, those statements would have been admissible under either scenario. That did not occur, however. Instead, we are relegated to determining whether Huff could testify about the wife's out-of-court statements. As recognized by *Hughes*, the statements by the wife were neither a statement against her interest nor party admissions.

1. TEX. FAM.CODE ANN § 261.109 (Vernon 1996).

Thus, that level of the hearsay was not admissible.

As in *Hughes*, in this case the wife's statements at least showed the possibility of penal liability for failing to report child abuse.[1] The wife's statements and those of the child indicated that any abuse by Robison of the child had occurred only a few times and had ended two years earlier, after Robison promised his wife he would stop. Under the reasoning of *Hughes*, we must conclude that the hearsay testimony was not admissible. Accordingly, the trial court erred by admitting the testimony over a proper objection.

The further question is whether the error is harmful. As acknowledged by the court in *Hughes*, testimony which consists of an admission by a defendant that he committed a crime is highly prejudicial in nature. In *Hughes*, the court remanded the case to the Fort Worth Court of Appeals for a harm analysis, but stated clearly that the evidence was highly prejudicial in nature.

Nevertheless, on remand the Fort Worth Court concluded that the error did not affect a substantial right of the appellant and affirmed the judgment. It based its decision on the existence of other evidence of Hughes' guilt, through the testimony and videotaped interview of the child, who stated that he "came into her room naked, fondled her, and rubbed against her on numerous occasions." *Hughes v. State*, 12 S.W.3d 166, 168 (Tex. App.—Fort Worth 2000, no pet.). There was also evidence that the mother had installed a lock on the child's bedroom door, but that Hughes kicked the door to break the lock. The court concluded that because there was sufficient evidence other than the improperly admitted evidence that the jury could have considered in deciding his guilt, the error did not affect a substantial right of the appellant. *Id.*; TEX.R.APP. P. 44.2(b).

■ The question is whether this evidence, although clearly highly prejudicial, is of such a nature as to, in light of the remaining testimony, affect a substantial right of the appellant. In making this determination, we also look at the other evidence before the jury.

Charlotte Robison testified that the girls had come home from school after a discussion on "inappropriate touching" and asked her to explain it to them. She testified that she told them it was when somebody touches you and it does not feel good to you, and they told her when they were little they liked daddy to tickle them on the inside of the leg. She testified that Amy said she did not like that any more "because he accidentally touched me in my private" and that Anna said she just did not like being tickled on the inside of her leg. Charlotte then testified that she

> called Mr. Robison into the house and I told him what the girls had told me and so we had a family discussion about it and he said that he didn't—he wasn't aware that they didn't like him to tickle them on the inside of their leg any more since they were older and that he wouldn't do it any more, and that he was sorry that he accidentally touched them on their privates.

The State asked her if he tickled them anywhere else, and she testified that he did when playing with them, and that Robison apologized to them and told them it would not happen again.

On cross-examination, Charlotte testified that the girls told her of only one incident of accidental touching and related nothing to her of intentional touching as contended by the State.

■ The most compelling evidence came in through an audiotape of Amy's interview with CPS worker Kay Long.[2] In the audiotape, which we have reviewed, the child

stated that she knew what private places were and that "sometimes—well, my dad had to because he was real real sick," and that he had never done it again. She said that it happened about two years ago, that it had not happened many times, and that he stopped when she asked him to. She said that he just lets go and says I'm sorry and that he would say that he was sorry he was doing that to her. When asked what he touched her with, she said he used his "hand and other thing." She refused to use a word, but would only say that it was with something a boy has that a girl does not have and apparently pointed to some area on her body, which is not determinable from the recording.

Amy testified at trial that the touching was accidental, but also provided testimony that could be taken to show that it was not, and she did not testify at trial in any respect that he had touched her with his penis.

Further, similar (if not so explicitly worded) testimony by CPS worker Kay Long was admitted without objection. Although Long did not testify that Charlotte had stated to her that Robison had admitted abusing the child, the implication that he had done so runs strongly through the testimony. It is reasonable to read Long's summary of Charlotte's conversation with Robison not as referring to a promise to stop tickling the girl, but as a promise to stop abusing her.

In light of all the evidence before the jury in this case, we conclude that Robison has not shown that the improperly admitted evidence affected his substantial rights. Tex.R.App. P. 44.2(b). The point of error is overruled.

Robison also contends that the trial court erred by admitting evidence at the guilt/innocence phase of the trial about prior sexual abuse by him of his daughter Vicky. The testimony shows that the

---

2. The audiotape was not transcribed into the official record. We do not approve of the practice of failing to transcribe evidence presented in oral form to the jury unless there is a prior transcription of the exact same evidence placed in the record with the approval of the trial court.

daughter is now thirty-one, and she testified that she and Robison engaged in sexual acts from the time she was five until she was seventeen. The initial question is whether this issue was preserved for appellate review. The State informed Robison in a pretrial motion about its intent to use her testimony. Robison filed an objection and sought a hearing on the matter. It does not appear that a hearing was held. However, the trial court signed and filed a written order on the day before Vicky testified in which he found the acts to have been committed by Robison, found the evidence relevant, and found that the evidence should be admitted over counsel's objection based on Texas Rules of Evidence 402, 403, and 404, and that having balanced the probative value against the prejudicial effect, he found that the evidence was admissible.

■ When Vicky took the stand, counsel did not object. In order to preserve a claim of error, counsel must object to the introduction of evidence of extraneous offenses. *Smith v. State*, 595 S.W.2d 120, 123 (Tex.Crim.App. [Panel Op.] 1980). Robison filed a motion in limine seeking to exclude this evidence, which was overruled by the trial court. However, when the evidence itself was later offered by the State, he did not reurge his objection. It is well settled that the denial of a motion in limine is not sufficient to preserve error for review, but rather there must be a proper objection to the proffered evidence. *McDuff v. State*, 939 S.W.2d 607, 618 (Tex. Crim.App.1997); *Webb v. State*, 760 S.W.2d 263, 275 (Tex.Crim.App.1988). A motion in limine may, however, be sufficient to apprise the trial court of the basis of a subsequent nonspecific objection at trial. *Thomas v. State*, 1 S.W.3d 138, 143 (Tex.App.—Texarkana 1999, no pet.).

■ In this case the trial court ruled on the pretrial motion in a written order, but counsel did not object when the evidence was actually offered. Thus, we must conclude that the claimed error was not preserved for review.

■ Even if it were preserved for review, it appears that the evidence was admissible to counter Robison's defensive theory that the touchings were accidental and occurred only because his hand slipped while he was tickling the girls. Vicky testified that his sexual activities with her originally began with tickling but escalated over time into a series of sexual acts. Thus, the testimony was admissible to rebut his defensive theory.

■ The admission of extraneous offense evidence is reviewed under an abuse of discretion standard. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex.Crim.App. 1996) (opinion on reh'g). If the trial court properly admits the evidence in light of the factors enunciated in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990), and the court's decision to admit the evidence is "within the zone of reasonable disagreement," the trial court's decision will be upheld. *Rankin*, 974 S.W.2d at 718.[3]

■ The written order reflects that the trial court conducted the requisite balancing test set out by TEX.R. EVID. 403 and found the probative value to substantially outweigh any unfair prejudicial effect of the evidence. In light of its value to negate the defense set out by Robison, it does not appear that the trial court abused its discretion by admitting the testimony.

■ Counsel next contends that Robison was denied his right to effective assistance of counsel in connection with the issue of possible jury misconduct. The

---

**3.** The general rule is that at the guilt/innocence phase of trial extraneous offenses are not admissible to show action and conformity with bad character. The evidence must have relevance apart from character conformity, i.e., it must make more or less probable an elemental fact or a fact that inferentially leads

to an elemental fact or tends to disprove in the same way. Examples are to prove motive, opportunity, intent, preparation, blame, knowledge, identity, or absence of mistake or accident. *Montgomery v. State*, 810 S.W.2d 372, 386–87 (Tex.Crim.App.1990) (opinion on reh'g).

standard of testing claims of ineffective assistance of counsel was set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on this claim, the appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000); *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App. 1999). To meet this burden, the appellant must prove that his attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for his attorney's deficiency, the result of the trial would have been different. *Tong*, 25 S.W.3d at 712. Under this standard a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

■■■ Our review of counsel's representation is highly deferential. We indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Tong*, 25 S.W.3d at 712. This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex.Crim.App.1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex.App.— Texarkana 1999, no pet.).

■■■ On the second day of the trial, local lawyer David Hamilton informed the trial court that the day before he had left the courthouse by the north exit, and had passed between a man and woman wearing juror badges, and heard the man say to her that "if the guy doesn't go to jail, then the court system doesn't work." Hamilton went back into the courthouse and informed the judge. The court asked him to remain in the courtroom and observe the jurors as they re-entered the courtroom. He identified Michael Huddleston as the juror.

With the agreement of both sides, in the presence of the other jurors, the court then called Huddleston to the stand and questioned him. The court asked him if he had made the statement above to another juror during a break the day before. Huddleston replied, "Not to my knowledge." The court then asked him if he had been on the landing between the second and third floor with a lady juror, to which he answered, "I'm not for sure."

Robison argues that the trial court's last question does not match the information provided by attorney Hamilton. This appears to be correct. Hamilton stated that he walked between the jurors as he exited the courthouse through the north door. One of the judge's questions refers to a landing between the second and third floor, which counsel states is inside the courthouse at a different location. Thus, it appears the judge asked his question about the wrong place.

However, the trial judge also asked Huddleston point blank if he had engaged in the conversation described above, and Huddleston denied the allegation. No questions were asked of any female jurors, and when the court asked counsel if they had anything they wanted to pursue in connection with the claim, both sides declined. The court found that no misconduct occurred.

Appellate counsel argues that trial counsel was ineffective because he made no effort to question Huddleston outside the

presence of the other jurors or to question any of the female jurors and made no effort to correct the trial court's misstatement about the location. Counsel further points out that by seeking separate questioning outside the presence of the jury he could have avoided reiterating the prejudicial and biased remark before the full jury.

There is some force to this argument. It is clear that Huddleston was to be questioned in any event, and it would have been possible to question him separately without causing any additional ill will either to him or by extension to the other jurors. Also, it would have been appropriate to question the female jurors separately to shed light on the issue of Huddleston's truthfulness. The question before this Court is whether counsel's failure to do so is constitutionally ineffective.[4] The only part of this review in favor of defense counsel is the fact that the hearing was, because of counsel's choices, extremely brief. Thus, if counsel was simply attempting to avoid angering the jury by spending excessive time and energy on attacking its members, his strategy succeeded.

Nevertheless, under the facts of this case, we agree that counsel's course of conduct in this instance was below professional norms. Other options were available that counsel could have used to pursue this issue, any of which would have been an improvement on the way in which this hearing was conducted—with counsel's consent.

The remaining question, however, is whether this representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. In this case, there is direct evidence from the complainant of the matters for which Robison was convicted. The evidence which

was presented to the court for decision is directly conflicting on the question of whether the improper discussion occurred. Counsel's representation of Robison, outside of this one area, was direct and competent. We do not believe that this single error is of such a nature as to convince this Court that the result of the trial was not just.

The judgment is affirmed.

---

4. The State argues that this argument is without force because it presumes that the misconduct occurred. Actually, it does not. Counsel's contention of incompetence is based on the position that it is impossible to determine whether the misconduct occurred because counsel was ineffective.