In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00151-CR


______________________________




WARREN KEITH RODGERS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 16,648-2001




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 A Wood County jury found Warren Keith Rodgers guilty of aggravated sexual assault and
assessed his punishment at thirty years' imprisonment and a $10,000.00 fine. On appeal, Rodgers
raises four issues: (1) whether the trial court erred by admitting Rodgers' written confession; (2)
whether the trial court erred by excluding, as hearsay, potential impeachment evidence; (3) whether
the trial court erred by admitting reputation testimony from witnesses not disclosed to Rodgers prior
to trial; and (4) whether the trial court erred by admitting evidence about the cause of death of
Rodgers' wife in violation of Rodgers' motion in limine. For the reasons set forth below, we affirm
the trial court's judgment.

I. Factual Background

 In the late evening of March 1, 2001, Mineola Police Officer Lucky Bolden and emergency
medical personnel were dispatched to a home in Mineola as a result of a 9-1-1 call. Upon arrival,
Bolden met Rodgers standing next to a van at the home of his cousin, Bennetta Allen. Speaking to
Bolden, Rodgers said his cousin was in the van. Bolden looked in the van, found Allen, and inquired
as to the nature of her injuries. Allen reported she had injured her leg during a fall and wanted to
go to the hospital. EMTs transported Allen to the hospital. During the trip, technicians determined
either her hip was fractured or her leg was broken. Allen also confided to the attending technician
that her cousin had assaulted her and tried to rape her. The ambulance driver later relayed the assault
information to Mineola police. 

 Bolden went to the Quitman hospital to interview Allen after police learned of Allen's assault
outcry. Another officer, Polly Leisure, accompanied Bolden. At the hospital, Bolden and Leisure
observed injuries to the victim not seen earlier at Allen's home, including dried blood around her
nose and blood in the whites of her eyes. Rodgers later showed up at the hospital and, at the request
of Bolden, agreed to go with Mineola Police Officer David Barkley to the Mineola Police
Department. 

 According to Barkley, Rodgers volunteered to ride with Barkley back to the police station
because Rodgers did not have his own vehicle. Rodgers rode in the front seat of Barkley's unmarked
police car. Rodgers was not placed in handcuffs, and Barkley's car contained no restraining cage. 
II. Issues Presented

A. Admission of Written Confession

 In his first point of error, Rodgers contends the trial court erred by denying his motion to
suppress his written confession. Rodgers claims the confession was the product of an illegal
custodial interrogation. An appellate court reviews a trial court's ruling on a motion to suppress for
abuse of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The reviewing
court may uphold a trial court's ruling on a motion to suppress on any legal theory or basis applicable
to the case, but usually may not reverse a trial court's ruling on any theory or basis that might have
been applicable to the case but was not raised. Martinez v. State, 91 S.W.3d 331, 336 (Tex. Crim.
App. 2002). The appellate court determines whether a trial court abused its discretion in overruling
a motion to suppress by examining the evidence in the light most favorable to the trial court's ruling. 
State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 

 At a suppression hearing, the trial court is the sole judge of witness credibility and the weight
to be given to witness testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). 
The trial court is free to believe or disbelieve all or part of any witness's testimony. Meek v. State,
790 S.W.2d 618, 620 (Tex. Crim. App. 1990); Cannon v. State, 691 S.W.2d 664, 673 (Tex. Crim.
App. 1985). If the trial court's findings are supported by the record, the reviewing court is not at
liberty to disturb those findings, and it should address the sole remaining question of whether the
trial court properly applied the law to those facts. Romero, 800 S.W.2d at 543. If the facts are not
contested in the trial court, then the trial court is in no better position than the reviewing court to
determine the facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (referencing
Villarreal v. State, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (McCormick, P.J. concurring)). 
In such instances, the reviewing court may conduct a de novo examination of the facts. The appellate
court also conducts a de novo review of the court's application of the law of search and seizure to
those facts. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). The trial court's ruling will
not be overturned unless its decision was outside the "zone of reasonable disagreement." Salazar
v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001).

 Voluntary, noncustodial statements are exempt from the requirements of Miranda and
Article 38.22 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.22
(Vernon 1979 & Supp. 2003); Miranda v. Arizona, 384 U.S. 436 (1966); Holland v. State, 770
S.W.2d 56, 58 (Tex. App.-Austin 1989), aff'd, 802 S.W.2d 696 (Tex. Crim. App. 1991). Voluntary,
noncustodial statements are admissible at trial. Holland, 770 S.W.2d at 58. 

 In Miranda v. Arizona, the United States Supreme Court defined "custodial interrogation"
as "questioning initiated by law enforcement officers after a person has been taken into custody or
otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. A
person is in "custody" only if, under the circumstances, a reasonable person would believe his or her
freedom of movement was restrained to the degree associated with a formal arrest. Dowthitt v. State,
931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing Stansbury v. California, 511 U.S. 318 (1994)). 
The reasonable-person standard presupposes an innocent person. Florida v. Bostick, 501 U.S. 429,
438 (1991). Moreover, the subjective intent of law enforcement officials to arrest is irrelevant unless
that intent is somehow communicated or otherwise manifested to the suspect. Stansbury, 511 U.S.
at 319. Custody determinations must be made on an ad hoc basis, after considering all of the
objective circumstances. Shiflet v. State, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985).

 The Texas Court of Criminal Appeals in Dowthitt v. State outlined some general situations
that may constitute custody: 1) when the suspect is physically deprived of his or her freedom of
action in any significant way, 2) when a law enforcement officer tells the suspect he or she cannot
leave, 3) when law enforcement officers create a situation that would lead a reasonable person to
believe his or her freedom of movement has been significantly restricted, and 4) when there is
probable cause to arrest and law enforcement officers do not tell the suspect he or she is free to leave. 
Dowthitt, 931 S.W.2d at 255 (citing Shiflet, 732 S.W.2d at 629).

 The restriction on freedom of movement in situations one through three must amount to the
degree associated with an arrest, as opposed to an investigative detention. Dowthitt, 931 S.W.2d at
255. In situation four, an officer must manifest to the suspect knowledge of probable cause. Id. 
Such manifestation results when information substantiating probable cause is related by the officers
to the suspect or by the suspect to the officers. Id. Situation four, however, does not automatically
establish custody. Rather, custody is established if the manifestation of probable cause, combined
with other circumstances, would lead a reasonable person to believe he or she is under restraint to
the degree associated with an arrest. Id. In short, we must examine the totality of the circumstances
and determine whether Rodgers' freedom of movement was restrained to a degree associated with
a formal arrest.

 In this case, Rodgers alleged his written confession was the product of an illegal custodial
interrogation. At the conclusion of the pretrial hearing, the court denied Rodgers' motion to
suppress. The trial court issued written findings of fact and conclusions of law, which held that
police gave Rodgers the Miranda warnings prior to taking his statement, that Rodgers was not
threatened by police or denied food or drink, that Rodgers had the opportunity to review and correct
his statement (prior to signing it), and that Rodgers was not under arrest at the time he gave his
statement. The trial court concluded Rodgers' confession was voluntary and noncustodial. 

 Because the evidence at the suppression hearing was uncontested, we review de novo the trial
court's factual findings on Rodgers' motion to suppress. See Guzman, 955 S.W.2d at 89. Barkley
testified he met Rodgers at the Quitman hospital emergency room on March 2, 2001. (Barkley had
been previously briefed by Bolden regarding Allen's claim that a family member had sexually
assaulted her.) Barkley informed Rodgers there was a discrepancy between the story given by the
caller to the 9-1-1 dispatcher and the story Allen gave officers regarding the nature of her injuries. 
Barkley asked Rodgers to come to the police station and told Rodgers that he was free to either drive
himself or ride with Barkley. According to Barkley's testimony, Rodgers agreed to ride with him.
Barkley further stated he used no physical force or verbal threats to get Rodgers to accompany him
to the station. 

 During the ride to the station, Rodgers was not placed in handcuffs, was not under arrest, and
rode in the front seat. Barkley and Rodgers entered the station through the front door, not the sally
port. Barkley left Rodgers in Barkley's office while he made coffee across the hall. The door to the
office was left open and unlocked. Rodgers was allowed to smoke. Before asking any questions,
Barkley reviewed the Miranda warnings with Rodgers from a card Barkley keeps in his wallet. 
Paraphrasing that card, Barkley testified:

 A I told him he had the right to remain silent and not make any statement
at all. Any statement you make can be used against him at trial. I asked him if he
understood. He affirmatively acknowledged yes.


 I advised him any statement you make may be used as evidence at
court. I asked him if he understood, he affirmatively stated yes.


 I stated you have the right to have a lawyer present to advise you prior
to and during any questioning. I asked him if he understood. He affirmatively said
yes.


 I stated if you are unable to employ a lawyer, you have the right to
have a lawyer appointed to advise you prior to and during any questioning. I asked
him if he understood, he again said yes.


 I told him you have the right to, you have the right to terminate the
interview at any time if you choose to do so. I asked him if he understood. He again
said yes. I then asked him if he wished to make any statement or answer my
questions without an attorney present. He again affirmatively said he would make
a statement.


 Barkley described Rodgers' demeanor during the questioning as calm and cooperative. 
Rodgers then gave a statement which was reduced to writing, witnessed by Barkley, and notarized
by Robert Honea. Honea described Rodgers' demeanor as calm. According to the confession,
Rodgers began giving the written statement at 3:45 a.m. Rodgers signed the statement at 4:40 a.m. 
Barkley testified that, before signing the statement, Rodgers was given an opportunity to make any
corrections to the statement he wished. The Miranda warnings, initialed again by Rodgers, appear
at the top of the document titled "VOLUNTARY STATEMENT." Rodgers' statement reads:

 I had trouble getting my van registered, and had some trouble at work. After I got up
this morning[,] took my medication[,] and at lunch then at about 5:00 pm I took it. 
After I got off work[,] I stopped in Dallas and got beer, and drank maybe a six pack
on the way to Mineola. I went [to] Anita's, W.K.R., Bernita's house. We were setting
[sic] on the couch watching T.V. and she mentioned sex. She started to give a blow
job. She wanted to stop and I forced her to finish by placing my hands around her
neck. She was trying to stop, then she fell on the table because I had my hands
around her neck forcing her to finish. After she fell[,] she did not move and began
complaining about her side hurting. I picked her up[,] took her to the van[,] and then
got [the van] stuck [in the mud]. So I went in the house and called the ambulance. 
She told me to call the ambulance when I got stuck. Then the ambulance came. The
police came first.

 

The statement concludes:

 I HAVE READ THIS STATEMENT CONSISTING OF 2 PAGE(S), AND I
CERTIFY THAT THE FACTS CONTAINED THEREIN ARE TRUE AND
CORRECT. I FURTHER CERTIFY THAT I MADE NO REQUEST FOR THE
ADVICE OR PRESENCE OF A LAWYER BEFORE OR DURING ANY PART OF
THIS STATEMENT, NOT AT ANY TIME BEFORE IT WAS FINISHED DID I
REQUEST THAT THIS STATEMENT BE STOPPED. I HEREBY
KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVE THE
RIGHT LISTED ON PAGE ONE OF THIS STATEMENT, AND NOT
DESIRING A LAWYER I VOLUNTARILY CHOOSE TO MAKE THE
ABOVE STATEMENT. S.S. # 459155451 

 

 [signed] Warren K. Rodgers 


 Barkley also testified that he again explained the Miranda warnings to Rodgers before
Rodgers signed the confession. According to Barkley, Rodgers affirmed he understood the Miranda
warnings, voluntarily waived those rights, and did not request the assistance of counsel at any time
during the making of the statement. Finally, Barkley testified he did not consider Rodgers to be in
police custody at the time Rodgers gave the statement, and Barkley did not consider Rodgers'
judgment to be impaired in any way as to prevent his statement from being voluntary. 

 The hallmarks of a custodial interrogation are not present in this case. Rodgers was never
handcuffed. He was not placed in the back of a patrol car equipped with a cage. Barkley never said
Rodgers was under arrest. Rodgers was not restrained in any way before giving his statement at the
police station; in fact, Rodgers was permitted to smoke and allowed to use the bathroom if needed. 
The door to Barkley's office was kept open and unlocked for approximately ten to fifteen minutes
while Barkley made coffee. In short, there is nothing in the record to indicate that the average person
would have concluded he or she was in police custody if put in Rodgers' situation. Therefore, the
written statement was not the product of a custodial interrogation. The trial court did not abuse its
discretion by admitting the confession.

B. Exclusion of Statements by Victim

 In his second point of error, Rodgers contends the trial court erred by excluding statements
by the victim that she dug her fingernails into her assailant. Allen told one of the hospital nurses that
she injured her attacker; Barkley learned this information later by reading Allen's medical records. 
At trial, Rodgers sought to cross-examine Barkley about Allen's statements. Allen's medical records
were not introduced into evidence through Barkley. The trial court sustained the State's objection
to the testimony as inadmissible hearsay. On appeal, Rodgers contends the evidence is admissible
for either impeachment or to show consent. 

 An appellate court reviews a trial court's admission or exclusion of evidence for abuse of
discretion. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). A reviewing court
should not reverse a trial court's ruling if it falls within the "zone of reasonable disagreement." Id.
at 102. A trial court abuses its discretion when it acts "without reference to any guiding rules and
principles" or acts arbitrarily or unreasonably. Montgomery v. State, 810 S.W.2d 372, 380 (Tex.
Crim. App. 1990) (quoting Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985)). "The mere fact that a trial judge may decide a matter within his discretionary authority in
a different manner than an appellate judge in a similar circumstance does not demonstrate that an
abuse of discretion has occurred." Montgomery, 810 S.W.2d at 380.

 Hearsay is an out-of-court statement offered at trial to prove the truth of the matter asserted. 
Tex. R. Evid. 801(d). Hearsay is not admissible except as provided by statute or by the Texas Rules
of Evidence. Tex. R. Evid. 802. Statements made for the purposes of medical diagnosis or
treatment are excepted from the hearsay rule. Tex. R. Evid. 803(4). "Hearsay included within
hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with
an exception to the hearsay rule provided in [the Texas Rules of Evidence]." Tex. R. Evid. 805.

 Rodgers sought to question Barkley about a written document that recorded a statement made
by the victim to a nurse. Stated differently, Rodgers asked the trial court to admit hearsay testimony
(Barkley's testimony) based on hearsay (the medical records) that was based on hearsay (nurse's
hearing of Allen's statements). Had the nurse who recorded Allen's statements testified to the
contents of properly authenticated business records, those statements might have been admissible. 
See Tex. R. Evid. 803(4). This was not, however, Rodgers' method of offering such evidence. And
Rodgers offered no reason to the trial court or in his brief to this Court that excepts the final level
of hearsay - Barkley's testimony about the medical records - from the hearsay rule. Nor does this
level of testimony fall within any of the other hearsay exceptions because Barkley had no first-hand
knowledge of Allen's statements as recorded in the medical records. Cf. Hughes v. State, 4 S.W.3d
1, 6 (Tex. Crim. App. 1999) (admission by witness not admissible as impeachment because person
testifying to statement had no first-hand knowledge of the admission); Robison v. State, 35 S.W.3d
257, 261 (Tex. App.-Texarkana 2000, pet. ref'd) (trial court erred, though error was harmless, by
admitting double hearsay). We find the testimony was properly excluded as hearsay; harm analysis
is therefore unnecessary.

C. Failure to Give Advance Notice of Reputation Witnesses Who Testified at Punishment

 In his third point of error, Rodgers contends the trial court erred by admitting testimony from
two previously undisclosed punishment witnesses who testified Rodgers had a bad reputation in the
community. The State called Bill Skinner, the Wood County Sheriff, and Robert Cole, a former
Assistant District Attorney of Wood County. Both testified that Rodgers had a bad reputation for
not being a peaceful and law-abiding citizen. Rodgers objected to this testimony on the basis that
he was not given notice before trial that these two witnesses would be called during the punishment
phase of trial.

 Article 37.07, Section 3(g) of the Texas Code of Criminal Procedure provides:

 On timely request of the defendant, notice of intent to introduce evidence under this
article shall be given in the same manner required by Rule 404(b), Texas Rules of
Criminal Evidence [now Texas Rules of Evidence]. . . . . The requirement under this
subsection that the attorney representing the state give notice applies only if the
defendant makes a timely request to the attorney representing the state for the notice.


Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp. 2003). In this case, Rodgers filed
a pretrial request for notice of the State's intent to use evidence relevant to sentencing, including
evidence of general reputation or character. The request stated:

 1. Warren Keith Rodgers, Defendant herein, files this request under the authority of
Article 37.07(3)[sic](a) and (g), of the Texas Code of Criminal Procedure.


 2. Defendant requests from the District Attorney's office of Wood County, Texas,
reasonable notice of intent to introduce evidence of: prior criminal record; general
reputation; opinion regarding character; circumstances of the offense being tried;
adjudication of delinquency; and extraneous and bad acts, including date on which
and county in which the alleged crime or bad act occurred and the name of the
alleged victim of the crime or bad act.


 Specifically, Defendant requests that the notice include the following: dates;
locations; types, or nature, of the alleged crimes, wrongs, or acts involved; and names
of the individuals involved; name of the courts involved.


 3. Defendant requests that the notice requested herein be given to him far enough in
advance of trial that he has reasonable time to investigate these matters and properly
prepare his defense.


This request was filed in the trial court on June 20, 2001, and contains a certificate indicating same
day service on the State. The State contends this document was merely an ungranted motion that
does not trigger the notification requirement because the "request" is not directed to the State.

 A plain reading of Rodgers' request reveals it was self-executing. Moreover, the second
paragraph is expressly directed to the Wood County District Attorney. The request did not require
the trial court's approval - such as would be the case with a standard discovery motion - before the
State would be required to provide a list of character witnesses it intended to call at punishment. See
Espinosa v. State, 853 S.W.2d 36, 39 (Tex. Crim. App. 1993) (Baird, J., concurring) (explaining that
"request" but not motion automatically triggers notice obligation); and cf. Hartson v. State, 59
S.W.3d 780, 787 (Tex. App.-Texarkana 2001, no pet.) (self-executing request triggers Article 37.07
notice requirement); and contrast Randon v. State, No. 06-01-00183-CR, 2003 WL 920571, *1 (Tex.
App.-Texarkana Mar. 10, 2003, no pet.) (defendant's motion for 37.07 notice does not necessitate
State giving notice unless trial court formally grants motion). 

 The State did not give Rodgers notice that it intended to call either Cole or Skinner until the
morning of the punishment hearing. We hold such notice was untimely. The logical consequence
of the State's failure to give adequate notice should have been the exclusion of those witnesses'
testimony. See, e.g., Roethel v. State, 80 S.W.3d 276, 281 (Tex. App.-Austin 2002, no pet.) (logical
result of failing to give reasonable notice pursuant to Article 37.07, Section 3(g) is exclusion of
evidence). Therefore, we hold the trial court erred by admitting Skinner's and Cole's testimony
regarding Rodgers' reputation within the community. Thus finding error, we must next determine
whether the error is harmful. See Johnson v. State, 43 S.W.3d 1 (Tex. Crim. App. 2001) (reviewing
court must analyze error for harm).

 The violation of the notice provision of Article 37.07, Section 3(g) does not, by itself,
mandate reversal. Roethel, 80 S.W.3d at 281. We have been made aware of no caselaw that
indicates whether the erroneous admission of character evidence violates the state or federal
constitutions. Rodgers cites Hernandez v. State, 914 S.W.2d 226, 232-33 (Tex. App.-Waco 1996,
no pet.), for the proposition that harm analysis should be conducted under Rule 81(b)(2) of the
former Texas Rules of Appellate Procedure (now Tex. R. App. P. 44.2(a)). (1) We believe there are
several problems with following Hernandez as precedent. (2)

 First, the Waco Court's holding in Hernandez was predicated on the former Rule of Appellate
Procedure regarding error. Hernandez, 914 S.W.2d at 232. Before 1997, the review standard for
errors in criminal cases did not distinguish between constitutional and nonconstitutional errors. Tex.
R. App. P. 81(b)(2) (Tex. Crim. App. 1986). Errors in all pre-1997 cases required reversal unless
the appellate court believed beyond a reasonable doubt that the error "made no contribution to the
conviction or to the punishment." Id. In 1997, however, the Texas Court of Criminal Appeals
promulgated new rules that distinguished between constitutional and nonconstitutional errors. Errors
of constitutional magnitude would still receive the same strict error analysis under new Rule 44.2(a)
as all errors received under the former Rule 81(b)(2). Tex. R. App. 44.2(a); Tex. R. App. P. 81(b)(2)
(Tex. Crim. App. 1986). But all other errors that did not affect the defendant's "substantial rights"
were now to be disregarded. Tex. R. App. P. 44.2(b). Thus, the rules under which Hernandez was
written have substantially changed since our sister court's opinion in Hernandez.

 Second, the issue before the Hernandez court was whether the defendant was harmed by the
erroneous admission of several extraneous offenses. (3) Hernandez was charged with murder and
injury to a child. He did not receive notice of the State's intent to introduce evidence of several
extraneous offenses until three days prior to trial. Hernandez, 914 S.W.2d at 229-34, 234-35. The
Hernandez court ultimately found the admission of some of the extraneous offenses violated the
timeliness requirements of Tex. R. Evid. 404(b). Id. at 235. (The Waco court also noted many of
the extraneous offenses were admissible under former Texas Penal Code 19.06, allowing for the
introduction of extraneous-offense evidence, because Hernandez' murder charge arose from a 1993
slaying which was prosecuted under the pre-1994 Texas Penal Code. Id. at 238 (referencing former
Tex. Pen. Code Ann. § 19.06)). (4) The issues before this Court are (1) whether the erroneous
admission of character evidence - rather than extraneous offense evidence - caused harm and, (2)
what is the proper standard for harm analysis. (5) We shall first address the latter issue.

1. Constitutional v. Nonconstitutional Error

 Whether the erroneous admission of reputation evidence is constitutional or nonconstitutional
error appears to be an issue of first impression. (6) Constitutional error is "an error that directly offends
the United States Constitution or the Texas Constitution without regard to any statute or rule that
might also apply." Alford v. State, 22 S.W.3d 669, 673 (Tex. App.-Fort Worth 2000, pet. ref'd). 
"With respect to the erroneous admission or exclusion of evidence, constitutional error is presented
only if the correct ruling was constitutionally required because a mere misapplication of the rules of
evidence is not constitutional error." Id. (finding failure to give constitutionally-required Miranda
warnings to be constitutional error). Article I, Section 10, of the Texas Constitution provides
criminal defendants with the right "to produce and have the evidence admitted by deposition, under
such rules and laws as the Legislature may hereafter provide . . . ." Tex. Const. art. I, § 10
(amended 1918). Admission of evidence is, however, governed by the Texas Rules of Evidence,
which are promulgated pursuant to authority granted to the Texas Court of Criminal Appeals in
criminal cases. Tex. Gov't Code Ann. § 22.109 (Vernon 1988). 

 Rodgers has not directed our attention to any authority stating the erroneous admission of
reputation or character evidence is constitutional error. Nor have we found such authority. The
Tyler Court of Appeals has held:

 [T]he constitution does not erect a per se barrier to the admission of evidence
concerning one's beliefs and associations at sentencing merely because those beliefs
and associations are protected by the First Amendment. Such evidence may be
admissible if it is shown to be relevant to the issues involved in the case.


Thompson v. State, 33 S.W.3d 847, 852-53 (Tex. App.-Tyler 2000, pet. ref'd). Similarly, the Fort
Worth Court of Appeals recently held the mere injury to a sex offender's reputation is insufficient
to implicate a constitutionally-protected liberty interest under state sex offender registration schemes. 
In re M.A.H., 20 S.W.3d 860, 864 (Tex. App.-Fort Worth 2000, no pet.) (referencing Cutshall v.
Sundquist, 193 F.3d 466, 479 (6th Cir. 1999); Russell v. Gregoire, 124 F.3d 1079, 1094 (9th Cir.
1997); E.B. v. Verniero, 119 F.3d 1077, 1102-04 (3rd Cir. 1997); Artway v. Attorney Gen. of New
Jersey, 81 F.3d 1235, 1268-69 (3rd Cir. 1996); Doe v. Pataki, 3 F. Supp. 2d 456, 467 (S.D.N.Y.
1998)); see also Paul v. Davis, 424 U.S. 693 (1976) (reputation alone is not a constitutionally-protected liberty interest); Alford v. City of Dallas, 738 S.W.2d 312, 317 (Tex. App.-Dallas 1987,
no writ) (reputation alone, apart from a more tangible interest such as employment, is not a liberty
interest that is protected by the Due Process Clause)); see further, Smith v. State, 18 S.W.3d 770, 771
(Tex. App.-San Antonio 2000, pet. ref'd) (stigma of incompetency, an injury to reputation, is, by
itself, insufficient to trigger constitutional rights to due process).

 We have also found no provision in the Texas Bill of Rights of the Texas Constitution that
either directly or indirectly references character evidence, other than the constitutional requirement
that the defendant be able to put on evidence in accordance with laws passed by the Texas
Legislature. See Tex. Const. art. I, § 10. But this same requirement does not govern the State's
authority to have evidence admitted, nor does it expressly encompass a defendant's corollary right
to the exclusion of evidence submitted by the State. Absent express guidance to the contrary from
the Texas Court of Criminal Appeals, we believe the erroneous admission of character evidence does
not implicate a defendant's constitutional rights. Therefore, we shall review the erroneous admission
of evidence in this case to determine whether the error affected Roger's substantial rights. See Tex.
R. App. P. 44.2(b); Johnson, 43 S.W.3d at 4. 

 A substantial right is affected when the error has a substantial and injurious effect on the
jury's verdict. Johnson, 43 S.W.2d at 4 (citing Kotteakos v. United States, 328 U.S. 750 (1946);
King v. State, 953, S.W.2d 266, 271 (Tex. Crim. App. 1997)). In the present case, there is no
evidence the reputation testimony had any more than a slight influence on the jury's punishment
verdict. The testimony of the two witnesses comprise a combined total of five pages in one volume
of a ten-volume record. By contrast, the testimony of Rodgers' punishment witness lasted as many
pages, and her testimony was more specific as to the many good things Rodgers had done in the past
for Allen (such as driving her to and from the airport, taking her to get groceries, and fixing things
in her house). The State did not mention the improper reputation testimony in its closing argument. 
Instead the State reiterated the violent nature of the crime for which the jury had convicted Rodgers. 
Given the short duration of the testimony, the heinous nature of this crime, and the fact that Rodgers
received a punishment on the lower end of the range of punishment (he faced life), we find the error
did not affect Rodgers' substantial rights, because the record before us does not indicate the improper
evidence had any more than a slight effect on the jury's verdict. We overrule Rodgers' third point
of error.

D. Inquiring about the Death of Rodgers' Former Wife

 In his final point of error, Rodgers contends the trial court erred by permitting Gladys Harris
(Rodgers' grandmother) to testify about the death of Amanda Rodgers, Rodgers' former wife. Before
trial, the trial court precluded the State from soliciting testimony regarding how and when Amanda
Rodgers died or whether Rodgers was being investigated for causing her death without first
approaching the trial court and obtaining its approval. 

 On direct examination, Harris testified to the following:

 Q Okay. Does his, is [Rodgers'] wife deceased?


 A Yes.


 On cross-examination, the State asked the following without first seeking the trial court's
approval:

 Q What was Mr. Rodgers' wife's name?

 A Amanda.

 Q Did she die a natural death?


 A I don't know.


 [Defense counsel]: Your Honor, we object. That's --

 

 THE COURT: Let me, let me ask counsel to approach.


The trial court overruled Rodgers' objection to the testimony. The State contends Harris' earlier
testimony that Amanda was dead opened the door to the State asking whether she died of natural
causes; Rodgers contends the testimony did not open the door. 

 The admission or exclusion of evidence is reviewed for abuse of discretion. Salazar, 38
S.W.3d at 153-54. The trial court's decision will be affirmed if it falls within the "zone of reasonable
disagreement." Id.

 Rodgers concedes "evidence of extraneous offenses could be admissible if the defendant
opened the door to the offenses." The witness's answer - "I don't know" - preceded the attorney's
objection. We believe the witness's testimony does not directly implicate Rodgers in the death of
his former wife. Read in the context of the witness's entire testimony, the statement "I don't know"
amounts to no substantive response to the question presented. Accordingly, we find no abuse of
discretion. Rodgers' final point of error is overruled.

 For the foregoing reasons, we affirm the trial court's judgment.




 Jack Carter

 Justice



Date Submitted: June 19, 2003

Date Decided: June 26, 2003


Publish
1. Former Rule 81(b)(2) read: 


 If the appellate record in a criminal case reveals error in the proceedings
below, the appellate court shall reverse the judgment under review, unless the
appellate court determines beyond a reasonable doubt that the error made no
contribution to the conviction or to the punishment. 


Tex. R. App. P. 81(b)(2) (Tex. Crim. App. 1986, amended 1997).
2. The cases cited by the State's brief present similar problems because none concerns the
erroneous admission of character evidence. See King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997) (admission of pen packets); Duren v. State, 87 S.W.3d 719, 731 (Tex. App.-Texarkana
2002, pet. denied) (admission of extraneous offense evidence); Fowler v. State, 958 S.W.2d 853,
864-66 (Tex. App.-Waco 1997), aff'd, 991 S.W.2d 258 (Tex. Crim. App. 1999) (admission of
scientific evidence without satisfying Kelly factors. Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App.
1992)).
3. The trial court in Hernandez admitted testimony regarding (1) defendant pulling a knife on
a witness, (2) the number of times defendant hit victim on the night he dealt the death blow to
victim, (3) defendant hitting victim in the stomach approximately two weeks before the injury that
killed victim, and (4) defendant threatening to "go after" family of a witness. Hernandez v. State,
914 S.W.2d 226, 229 (Tex. App.-Waco 1996, no pet.).
4. Former Article 19.06 read:


 (a) In all prosecutions for murder or voluntary manslaughter, the state or the
defendant shall be permitted to offer testimony as to all relevant facts and
circumstances surrounding the killing and the previous relationship existing between
the accused and the deceased, together with all relevant facts and circumstances
going to show the condition of the mind of the accused at the time of the offense.


 (b) In a prosecution for murder or manslaughter, if a defendant raises as a
defense a justification provided by Section 9.31, 9.32, or 9.33 of this code, the
defendant, in order to establish the defendant's reasonable belief that use of force or
deadly force was immediately necessary, shall be permitted to offer:


 (1) relevant evidence that the defendant had been the victim of acts
of family violence committed by the deceased, as family violence is defined
by Section 71.01, Family Code; and


 (2) relevant expert testimony regarding the condition of the mind of
the defendant at the time of the offense, including those relevant facts and
circumstances relating to family violence that are the basis of the expert's
opinion.


Act of April 17, 1991, 72nd Leg. R.S., ch. 48, § 1, 1972 Tex. Gen. Laws 474, repealed by Act of
May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3614 (now found at Tex. Code
Crim. Proc. Ann. art. 38.36 (Vernon Supp. 2003)). 
5. Since the rules change in 1997, several courts of appeals, including this Court, have stated
the erroneous admission of an extraneous offenses does not constitute constitutional error. See
Peters v. State, 93 S.W.3d 347, 354 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd); Duren, 87
S.W.3d at 731-32; Avila v. State, 18 S.W.3d 736, 741-42 (Tex. App.-San Antonio 2000, no pet.). 
6. Only the Texas Court of Criminal Appeals' decision in Smith v. State, 919 S.W.2d 96 (Tex.
Crim. App. 1996), abrogated by Moseley v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998),
regarding the erroneous admission of the personal character of a capital murder victim comes close,
but does not directly address the issue before us. (The Court held the character evidence was
inadmissible, but its erroneous admission was nonetheless harmless.)