

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-11-00091-CR

DAVID DAVILA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th Judicial District Court
Titus County, Texas
Trial Court No. CR17,132

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

When David Davila was stopped for a traffic offense, he claimed the truck he was driving was borrowed. The officer became suspicious when Davila, whose hands were shaking, could tell him neither the name of the person he claimed had let him borrow the truck in Weslaco nor the name of the "friend" he claimed he was to visit in Alabama. The suspicion deepened when Davila claimed never to have been arrested on drug charges, but the officer discovered that claim to be untrue. With permission from Davila, the officer searched the vehicle and found a hidden compartment containing a quantity of marihuana.[1] On appeal, Davila asserts errors in the denial of a mistrial and in the admission of evidence and argues that the evidence was insufficient that he knew the marihuana was in the truck.

We affirm the judgment of the trial court because (1) the veniremember's comment did not require a mistrial, (2) the traffic stop was not improperly extended, (3) extraneous evidence was properly handled with a limiting instruction, and (4) the evidence sufficiently showed that Davila knew marihuana was in the vehicle.

*(1)    The Veniremember's Comment Did Not Require a Mistrial*

We first address Davila's argument concerning jury selection. Davila contends that a comment made by a panelist was of such import that it caused irreparable damage to the jury pool and that a mistrial should therefore have been granted.

---

[1]Davila was convicted for possession of between fifty and 2,000 pounds of marihuana and sentenced to eleven years' imprisonment. Remarkably, several months later, police were contacted by a company that had apparently obtained the truck from the impound lot—they found another hidden compartment with more marihuana.

2

At the very beginning of voir dire, the State asked the panel if anyone had heard anything about the case or had any factual knowledge about the case. Juror fifty-six stated that he had read about it in the newspaper and, when asked if he had an opinion of the guilt of the defendant, answered, "Yes, he was caught red-handed." The panelist was questioned further at the bench and was excused for cause. Davila moved for mistrial, arguing that this statement infected the whole panel, as it constituted nothing less than testimony by a potential juror before the trial could begin. Davila did not, however, ask for an instruction to disregard the comment, instead requesting a mistrial because the unsolicited statement would so thoroughly infect the minds of the panelists as to be indelible.[2]

Accordingly, the only question is whether the trial court abused its discretion by refusing to grant a mistrial. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).[3]

Mistrial is an extreme remedy which is appropriate only when the objectionable event is so emotionally inflammatory that a curative instruction is not likely to prevent the jury from being unfairly prejudiced against the defendant. *Young*, 137 S.W.3d at 71. The challenged statement, although blunt and unfortunate in this setting, is also a statement of a belief existing as a result of reading the newspaper, rather than a statement of personal knowledge of unlawful activities. As

---

[2]Counsel also re-urged the motion the next morning, before trial began.

[3]We acknowledge that there is a legitimate question as to whether a request for a mistrial can even exist during voir dire, as at that point the normal considerations, such as double jeopardy, have not yet come into play. However, the Texas Court of Criminal Appeals has treated such a motion as a true request for mistrial, and we must follow its lead. *See Young v. State*, 137 S.W.3d 65, 73 (Tex. Crim. App. 2004) (Johnson, J., dissenting).

such, it falls squarely within the range of matters that are typically curable by providing information and direction to the panel about the proper place of speculation or information gleaned from outside sources. Because, in our view, it is not of such an extreme nature as to be incurable by proper instruction, the trial court did not abuse its discretion by denying a mistrial. The contention of error is overruled.

*(2)     The Traffic Stop Was Not Improperly Extended*

Davila urges that the marihuana should have been excluded from evidence because the arresting officer conducted an illegal custodial interrogation, improperly extending the length of the stop. The State argues that this constituted nothing more than a permissible conversation with Davila and was in no means an unlawful interrogation.

Asking about matters unrelated to the justification for a traffic stop does not convert the encounter into something else, so long as those inquiries do not measurably extend the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323 (2009); *Muehler v. Mena*, 544 U.S. 93, 100–01 (2005). The record does not show such an extension. Rather, it shows that the officer talked to Davila while they were sitting together in the squad car and as the officer completed the warning ticket and obtained information about any prior arrest record.[4]

Counsel argues that, because the officer asked Davila to sit in the squad car with him rather than standing on the shoulder of the road, Davila's freedom of movement was sufficiently

---

[4]*See Kothe v. State*, 152 S.W.3d 54, 63–65 (Tex. Crim. App. 2004) (only after computer checks completed is traffic-stop investigation fully resolved).

4

restricted to constitute placing him in custody. Therefore, he continues, Davila should have then been given *Miranda*[5] warnings and the conversation at that point morphed into a custodial interrogation. We disagree.

In *Miranda v. Arizona*, the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444; *Herrera v. State*, 241 S.W.3d 520 (Tex. Crim. App. 2007). A person is in "custody" only if, under the circumstances, a reasonable person would believe his or her freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *Rodgers v. State*, 111 S.W.3d 236, 239–41 (Tex. App.—Texarkana 2003, no pet.).[6] The record does not show that Davila was restrained either physically or otherwise, or that he was under arrest (in fact, he was told that he was not, but was only waiting for completion of the warning ticket). Conducting the discussion inside the squad car, in the absence of other factors, did not convert the situation into a custodial one. The contention of error is overruled.

---

[5]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[6]The Texas Court of Criminal Appeals in *Dowthitt* outlined some general situations that may constitute custody: (1) when the suspect is physically deprived of his or her freedom of action in any significant way, (2) when a law enforcement officer tells the suspect he or she cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe his or her freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he or she is free to leave. 931 S.W.2d at 255. The restriction on freedom of movement in situations one through three must amount to the degree associated with an arrest, as opposed to an investigative detention. *Id.*

*(3)     Extraneous Evidence Was Properly Handled with a Limiting Instruction*

Davila also contends that the trial court erred by allowing the jury to hear evidence of extraneous offenses during the guilt/innocence stage of the trial. The issue was initially addressed outside the presence of the jury in the course of determining whether the officer had a reasonable suspicion that would justify extending the stop. The underlying purpose of the hearing was to determine whether the evidence obtained as a result of the stop should be suppressed because of constitutional problems with the stop. The officer testified that Davila had denied ever being arrested, but that a warrant check revealed that he had been arrested a few months earlier in Willacy County for possession of over fifty pounds of marihuana.[7] The trial court concluded that the testimony was admissible for that purpose. When the evidence was elicited before the jury, the court gave the jury a limiting instruction.

We review for abuse of discretion a trial court's admission or exclusion of extraneous-offense evidence. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Moreover, a trial court's decision regarding admissibility of evidence will be sustained if correct on any theory of law applicable to the case, even when the court's underlying reason for the decision is wrong. *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990). As a general rule, to prevent an accused from being prosecuted for some collateral crime or misconduct, the State may not introduce evidence of bad acts similar to the offense charged, even if relevant.

---

[7]There was no suggestion at trial, and is none here, that the identification of Davila as the actor in those other situations was incorrect.

6

Rule 404(b) provides that evidence of "other crimes, wrongs or acts" is not admissible to prove a defendant's character in order to show action in conformity therewith. TEX. R. EVID. 404(b). This type of evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*; *Swarb v. State*, 125 S.W.3d 672, 680 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). That list is not exclusive. Therefore, evidence could be admitted under appropriate safeguards to show, not character conformity, but that the officer had a reasonable suspicion to extend his interactions with Davila.

The evidence was not admitted to show that Davila had actually committed the offense, but to show that he had lied to the officer about whether he had been previously arrested. The admitted evidence contains minimal information about an extraneous offense, but the trial court appropriately directed the jury to disregard that aspect of the evidence and to use the evidence solely for the purpose of showing the existence of Davila's untruth about a prior arrest—providing some support for the officer to have a reasonable suspicion about the nature of Davila's activities. Evidence of related arrests has been held admissible when redacted arrest warrants were presented and accompanied by an appropriate limiting instruction. *See Swarb*, 125 S.W.3d at 682.

When evidence is admissible for one purpose only, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a). While Rule 105(a) does not specifically impose a requirement regarding when the trial court's jury

7

instruction must be made, "logic demands that the instruction be given at the first opportunity," for example, when a limiting instruction is requested at the time evidence of extraneous offenses is admitted. *Rankin v. State*, 974 S.W.2d 707, 711–13 (Tex. Crim. App. 1996); *see Mendiola v. State*, 995 S.W.2d 175, 183 (Tex. App.—San Antonio 1999), *rev'd on other grounds*, 21 S.W.3d 282 (Tex. Crim. App. 2000). Such an instruction was promptly and clearly given here.

Generally, we presume that the jury follows the trial court's instructions and that a limiting instruction cures any harm. *Moore v. State*, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994) (en banc); *Vega v. State*, 255 S.W.3d 87, 105 (Tex. App.—Corpus Christi 2007, no pet.). Thus, even if error occurred in this instance, the limiting instruction given by the court would have cured any harm. The contention of error is overruled.

*(4)      The Evidence Sufficiently Showed that Davila Knew Marihuana Was in the Vehicle*

Davila also contends that the evidence is insufficient to prove that he intentionally or knowingly possessed marihuana. The argument essentially says there is nothing to indicate that he had any knowledge of the existence of any hidden compartments, thus, no evidence that he knew of the presence of the marihuana.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the crime. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863

(Tex. App.—Texarkana 2010, pet. ref'd). We are to rigorously review the evidence for legal sufficiency, focusing on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).[8]

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). There is no suggestion or claim of error in the charge in this case, and the sole portion of the evidence under attack is whether the evidence shows that Davila was indeed in possession of the contraband. Possession is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2011).

Davila was in possession of marihuana as charged in the indictment if he (1) knowingly (2) possessed fifty pounds or more but less than 2,000 pounds (3) of marihuana. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). "To prove unlawful possession of a controlled substance, the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband."

---

[8]The indictment specifically alleges possession of between fifty and 200 pounds of marihuana, not the 2,000 pounds specified by the jury charge, judgment, or underlying statute. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(5) (West 2010).

*Poindexter v. State*, 153 S.W.3d 402, 405 n.3 (Tex. Crim. App. 2005); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West 2010). Davila challenges only the element of knowing possession.

Mere presence at a location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). When the accused is "not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). Although Davila was alone in the vehicle at the time, the evidence is that the vehicle did not belong to him. Thus, the vehicle was not "in his exclusive possession." To reason otherwise would mean that any individual driving a borrowed vehicle was automatically responsible for anything that might be in the vehicle, whether or not there was any reason for the person to know.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish someone's possession of contraband include: (1) his or her presence when a search is conducted, (2) whether the contraband was in plain view, (3) his or her proximity to and the accessibility of the narcotics, (4) whether he or she was under the influence of narcotics when

10

arrested, (5) whether he or she possessed other contraband or narcotics when arrested, (6) whether he or she made incriminating statements when arrested, (7) whether he or she attempted to flee, (8) whether he or she made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether he or she owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether he or she was found with a large amount of cash, (14) whether his or her conduct indicated a consciousness of guilt, (15) whether he or she made incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, and (17) whether he or she was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd); *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.); *see Jones*, 963 S.W.2d at 830. The number of links is not dispositive; rather, we look to the "logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

In this case, most of the factors set out above do not apply. Davila was driving a vehicle he did not own. He claimed it was loaned to him by a friend in Weslaco, whose name he could not remember, so that he could meet another friend in Alabama, whose name he could not remember (but who was identified as "Junior" and for whom Davila had no address or telephone number).

11

Davila lied to the officer about his prior arrest record, he had sole possession of the vehicle, and he was so nervous while removing the insurance information from the glove box that he nearly dropped it while handing it to the officer.

The officer asked for, and was given, permission to search the vehicle. He spotted a nonstandard compartment under the passenger compartment. The vehicle was taken to the Department of Public Safety office, where a drug dog confirmed the officer's suspicions. On removing the seat and pulling back the carpet, they found the entry point to the compartment, which contained eighteen bundles of marihuana.

Thus, we have evidence supporting the theory that Davila was acting as a courier for someone, moving well-concealed contraband from one state to another. We also have extreme nervousness consistent with Davila's knowledge that he was so engaged.

Counsel argues that one compartment was so well concealed that it was not found for months; thus, it is reasonable to assume that Davila had no knowledge of the existence of either compartment. We fully acknowledge that, in some circumstances, this could be the case. It is not a far stretch to realize that an innocent purchaser could have bought the pickup, or that an innocent borrower could have borrowed the vehicle and driven it without knowing of the secret compartments.

That certainly does not appear to be the situation before us. There is no doubt that the compartments were well concealed. Davila's behavior, however, was entirely consistent with a

"mule" transporting contraband; and the trip, as he described it to the officer, was also entirely consistent with such an endeavor. Additionally, Davila's lack of knowledge of the names of the individuals at the beginning and end of his claimed trek also supports a conclusion that he knew that his trip was for a guilty purpose. *See Castellano v. State*, 810 S.W.2d 800, 806 (Tex. App.—Austin 1991, no pet.) (similar fact situation).

Proof of a culpable mental state relies generally on circumstantial evidence, and thus proof of knowledge is an inference drawn by the fact-finder from all the surrounding circumstances. *Gardner v. State*, 736 S.W.2d 179, 182 (Tex. Crim. App. 1987). Mental states are almost always inferred from acts and words. The mental culpability of a defendant is of such a nature that it generally must be inferred from the circumstances in which a prohibited act or omission occurs. A mental state is concealed within the mind of an individual and can be determined only from his or her words, acts, and conduct. *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). All of the evidence taken together would allow a jury to find that Davila had the requisite knowledge that he was in possession of contraband. The evidence is sufficient to support the verdict.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:     January 17, 2012
Date Decided:       February 7, 2012

Do Not Publish

13